**C. I. T. FINANCIAL CORPORATION,**
Plaintiff-Appellant,

v.

**Patrick W. R. GLOVER et al., Defend-
ants-Appellees.**

No. 174, Docket 23198.

United States Court of Appeals
Second Circuit.

Argued May 3, 4, 1955.

Decided June 10, 1955.

Isidor J. Kresel, New York City
(Kresel & Meyerson, Melbourne Berger-
man, Eugene F. Back, and Homer Krip-
ke, New York City, on the brief), for
plaintiff-appellant.

William Power Maloney, New York
City (Mendes & Mount, John A. Garrity,
Saul Levy, and Edward L. Keefe, New
York City, on the brief), for defendants-
appellees.

Before CLARK, Chief Judge, ME-
DINA, Circuit Judge, and DIMOCK, Dis-
trict Judge.

CLARK, Chief Judge.

The plaintiff, Commercial Investment
Trust Financial Corporation (C.I.T.),

sued the firm of Barrow, Wade, Guthrie & Co. (B.W.G.), certified public accountants, to recover for losses incurred by plaintiff through the bankruptcy of its debtor, Manufacturers Trading Corporation (M.T.C.), in October, 1948. In the course of its lending business plaintiff had lent M.T.C. some $1,440,000 on October 17, 1945, and had failed to call in its loan thereafter, in alleged reliance on defendants' statements concerning the financial condition of M.T.C. The complaint stated five different causes of action, alleging negligence and gross negligence in pre-loan and post-loan audits, and also charging, in a fifth count, concealment of prior errors in each subsequent audit. Plaintiff's appeal does not contest the propriety of Judge Ryan's action in dismissing the first and fifth counts, but instead concentrates its attack on the jury verdict for the defendants on the remaining counts.

In response to special interrogatories, the jury found that plaintiff had established defendants' duty to it under the second and fourth counts relating to gross negligence, but not on the third count, which had charged ordinary negligence in the post-loan audits. On all three counts the jury further concluded that plaintiff had failed to prove defendants' representations false or misleading in any material respect.[1] It is this latter finding which resulted in the defendants' verdict that the plaintiff particularly attacks on this appeal as erroneous in law and in fact.

The contentions of the parties as to the facts can be briefly summarized as follows. Plaintiff claimed that defendants' audits were fatally inadequate for failure to disclose overvaluation of M.T.C.'s loans to its debtors. Plaintiff argued that defendants should have pointed out the necessity for larger reserves due to the stagnancy of certain collateral, and due to its concentration in certain types of merchandise and in certain individual debtors, including Joseph Sachs, the brother of M.T.C.'s president, Alfred H. Sachs. This was the gist of the com-

1. The relevant interrogatories and replies were as follows:

On the second cause of action the jury answered the first two questions. Question No. 1 was, "Were the statements and certification issued for the period ending June 30, 1945 made by the defendants with reason to believe that it would come to the notice of and would be relied upon by those with whom Manufacturers Trading Corporation and its subsidiaries would transact business or seek the granting of credit and the making of loans to Manufacturers Trading Corporation and to its subsidiaries?" which the jury answered in the affirmative. To question No. 2, "Were the representations contained in the statement and certification for the period ending June 30, 1945 false or untrue in a material respect?" it answered "No."

With respect to the fourth cause of action, two questions were again considered. Question No. 1 was, "Were the statements and certifications of the audit reports of defendants for the period subsequent to June 30, 1945 made by defendants with reason to believe that they would come to the notice of and would be relied upon by those with whom Manufacturers Trading Corporation or its sub-

sidiary would transact business in the granting of credit and the making of loans to Manufacturers Trading Corporation? Answer yes or no with respect to each period:" The jury answered "Yes" to each period, and answered "No" to each period in response to question No. 2, which read, "With regard to any period for which your answer to question No. 1 is in the affirmative, state whether the representations contained in the statement and certification for this period were false or untrue in a material respect, and if so, for which period."

The first two questions relating to the third cause of action were also unanimously decided. Question No. 1 was, "Did the defendants conduct the audits subsequent to June 30, 1945 and make reports and representations and certifications therein with particular knowledge that they were to be submitted to and were made for the primary benefit of and were to be relied upon by the plaintiff?" This the jury answered, "No on the basis of the emphasis on 'primary.'" Nonetheless it went further and answered the second question, "Were the audits and reports subsequent to June 30, 1945 false and untrue in a material respect as result of defendants' negligence?" in the negative.

plaint, although reference was also made to alleged misclassification of particular items as accounts receivable, rather than as inventory loans.

The defense relied on the special nature of M.T.C.'s business and on plaintiff's knowledge of this. Defendants maintained that M.T.C. in its financial transactions had always relied primarily on the borrower's collateral, rather than on his general financial condition. Accurate appraisal of the value of such collateral in the event of the debtor's not infrequent insolvency and bankruptcy was always extremely difficult, and M.T.C.'s past income had resulted from Alfred H. Sachs' peculiar genius in such valuation. Defendants claimed that they had never asserted their own special competence to make such appraisals, but that they had inserted in their audit reports appropriate disclaimers qualifying their general assertions about M.T.C.'s financial stability. Further, they claimed that M.T.C.'s business was such that accountants had to rely to a great extent on management statements about the nature and the value of the collateral, and that, since the audit reports disclosed this reliance, defendants were not liable for whatever factual errors might have occurred. In addition, the defense asserted the factual correctness of the audits as made and claimed that plaintiff's inquiries of Sachs in response thereto showed adequate disclosure of M.T.C.'s weaknesses.

■ On all these points there was a sharp conflict of testimony. However we might ourselves have resolved this conflict, we cannot say that the jury's verdict was so clearly mistaken as to warrant reversal unless some error of law was committed.

■ In this connection the plaintiff strongly urges that the jury's verdict must have been based on the defendants' disclaimer, and that this issue should have been decided by the judge as a matter of law in plaintiff's favor. Each audit report had a disclaimer in these or similar words: "While it was not within our province to pass upon or assume responsibility for the legal or equitable title to the commercial receivables purchased by the companies or the valuation of any security thereto accepted and held by them, it was apparent from their books and records and by opinion of counsel, that their contractual and assignment forms are adequate for their legal protection in connection with the collection and liquidation of commercial receivables purchased." Plaintiff asserts that, as a matter of law, this disclaimer was limited to denying responsibility for the valuation of collateral and that, as a matter of law, defendants' responsibility for the valuation of receivables was unaffected by the disclaimer. But the jury could reasonably find that this dichotomy between face value and collateral was meaningless in the kind of transactions in which M.T.C. had been engaged, and that this fact had been adequately brought home to plaintiff, with the result that the disclaimer applied to the valuation of both collateral and receivables. With a proper charge, as given, the meaning of the disclaimer was therefore correctly left to the jury.

■ The plaintiff claims further that the instructions to the jury were erroneous in charging that in order to establish a duty to the plaintiff for ordinary negligence in preparation of the post-loan audits, the jury had to find that these reports had been made for the "primary benefit" of the plaintiff. Whatever the propriety of this charge, and we incline to think it was correct, see Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139; O'Connor v. Ludlam, 2 Cir., 92 F.2d 50, certiorari denied 302 U.S. 758, 58 S.Ct. 364, 82 L.Ed. 586, it could not have affected the outcome of the case. It is true that the jury indicated that its finding of absence of duty under count three, with which we are here concerned, was predicated on the emphasis on primary benefit. The jury went on, however, to find that defendants' representations had not been

negligently false or misleading, and this second finding alone bars recovery on this count.

Finally, plaintiff complains of the prejudicial tactics of the counsel for defense during the trial. Plaintiff's objection to the defendants' insistence on a jury trial, as was concededly their right, is surely not meant to be taken seriously. Defense counsel did indulge in numerous minor undesirable maneuvers, including repeated leading questions and unwarranted interruption of opposing cross-examination with argumentative statements. All this was properly censured and excluded by the trial judge. Of greater concern is the summation of the defense counsel, wherein he analogized this lawsuit and its antecedents to the fable of Little Red Riding Hood, with uncomplimentary characterizations of C.I.T. and M.T.C. personnel and of opposing counsel. We might properly have ordered a new trial for this unwarranted and injudicious behavior, even though a complicated trial of long duration was at stake, were it not for the countervailing fact that Judge Ryan took exceptional pains to preserve plaintiff's rights and interests at all stages in the litigation. The judge repeatedly curbed defense counsel even before counsel for the plaintiff had objected to what was going on, and this direct intervention must surely have offset much, if not all, of the deleterious effect of the defense tactics in the minds of the jury. Furthermore, and of even greater importance, Judge Ryan's charge to the jury was outstandingly careful and complete and dispassionately presented to the jury all the important contentions of both sides. On this record, viewed as a whole, we do not think that reversal is justified.

Plaintiff argues vigorously the importance of this case in holding accountants to strict liability for their audits, and, in effect, for increasing that liability. But we do not believe we should attempt to go beyond the standards of the market place, as reflected in current judicial decisions. So when, after a fair and carefully conducted trial under existing law, a jury has found for the defendants, the function of the courts should be considered fulfilled.

Judgment affirmed.