Charles L. RYAN and Marvin G. Snyder,
Appellees,

v.

James A. KANNE, Mid-States Enterprises,
Inc., and Kanne Lumber and Sup-
ply, Inc., Appellants.

KANNE LUMBER AND SUPPLY, INC.,
Cross-Petitioner-Appellee,

v.

Charles L. RYAN and Marvin G. Snyder, De-
fendants to Cross-Petition-Appellants.

No. 53533.

Supreme Court of Iowa.

Sept. 5, 1969.

Supplemental Opinion on Denial of
Rehearing Nov. 12, 1969.

Wunschel & Schechtman, Carroll, for appellants and appellee on counterclaim.

Minnich & Neu, Carroll, and Jones, Hoffmann & Davison, Des Moines, for appellees and appellants on counterclaim.

LARSON, Justice.

This action for accounting fees filed by plaintiff-accountants, with a counterclaim filed by one of the defendants, Kanne Lumber and Supply, Inc., was tried to the court without a jury and resulted in a judgment against all defendants for accounting services in the sum of $3,434.67 and a judgment in favor of Kanne Lumber and Supply, Inc. for damages in the sum of $38,685.81. All parties appeal. We modify and affirm.

Plaintiffs' petition, filed June 21, 1966, contained four counts, three of which are relevant to this appeal. In Division I it was alleged that the defendant James A. Kanne was liable to plaintiffs under an oral contract of employment. In Division II plaintiffs alleged the defendant Mid-States Enterprises, Inc., was liable to them as guarantor of the account; and in Division III plaintiffs based their claim against the Kanne Lumber and Supply, Inc. on quantum meruit. Defendants' answers denied all material allegations of plaintiffs'

petition and Kanne Lumber and Supply, Inc. filed a counterclaim in two divisions. Division I alleged negligence on the part of plaintiffs, and Division II which alleged fraud was withdrawn during trial. Damages in the sum of $49,868.16 were asked. Trial commenced January 5, 1967. On September 29, 1967, the court's decree was filed granting plaintiffs judgment against all three defendants and granting Kanne Lumber and Supply, Inc. judgment on its counterclaim against plaintiffs in the sum of $46,248.16. Pursuant to plaintiffs' motions on October 13, 1967, for judgment notwithstanding the verdict, for new trial, and to correct judgment before recording, the trial court on May 16, 1968, overruled the motions for judgment notwithstanding verdict and for a new trial, but sustained in part the motion to correct judgment and reduced the judgment on the counterclaim to $38,685.81. Plaintiffs appealed on June 13, 1968, and the next day defendants also took an appeal.

Assigned as error upon which defendants rely for reversal is the court's award of fees to plaintiffs "since no services of value were rendered."

Assigned as error upon which plaintiffs rely for reversal are: (1) the court erred in awarding damages to Kanne Lumber and Supply, Inc. in that damages, if any, were to the stockholders of the corporation; (2) the court erred in awarding damages to Kanne Lumber and Supply, Inc. and in the computation thereof; (3) the court erred in finding the plaintiffs negligent where the issued statement as to certain business operations of James Kanne was not certified and with respect to which plaintiffs affirmatively stated they expressed no opinion; (4) the court erred in holding plaintiffs liable to Kanne Lumber and Supply, Inc. on breach of contract theory where there was no privity between them; (5) the court erred in failing to hold that Kanne Lumber and Supply, Inc. and its stockholders and officers were guilty of contributory negligence in that they failed to heed plaintiffs' warning as to newly-discovered accounts payable and await an updating of the financial statement; (6) the court erred in relying upon improper authority for its conclusions and in going outside the record for a basis of its ultimate findings and conclusions.

We will not necessarily consider these assignments in that order and, for convenience, will refer to the plaintiff-appellees and cross-petition-defendant-appellants as the plaintiffs, and the plaintiff-appellee in the cross-petition as the defendant herein.

It appears without serious controversy that James A. Kanne owned and operated certain businesses including lumber companies in Carroll and Breda, Iowa, that he had incurred considerable indebtedness in connection therewith, that his accounting procedure left much to be desired, and that he was in need of further financing. It further appears that at the instance of officers of a creditor, the Mid-States Enterprises, Inc., he sought the services of the plaintiffs, who were certified public accountants and directed them to consult Mr. Feldmann of Mid-States, who was also a C.P.A., as to what was necessary in the financial statement requested. Particular attention to the item of Accounts Payable—Trade was directed and became the critical part of plaintiffs' undertaking. Feldmann discussed with Ryan the procedure recommended to determine that item in the accounting, stating, " * * * we agreed that this would be the critical area, that we should do everything possible to find out what payables may exist." The witness Collison also testified, " * * * if I can correctly quote Bob Feldmann, he said, 'Use every conceivable means to determine the accounts payable.' " It appears Ryan agreed to follow the suggested investigative procedure to determine accounts payable, made some efforts to follow it, and guaranteed the accuracy of their statement as to that item within $5,000. He testified he felt very confident his balance sheet was correct within $5,000 at the time it was submitted.

Pursuant to these directions, plaintiffs spent considerable time and effort, as indicated in the itemized statement, Exhibit "A", attached to their petition, in preparing and submitting the contemplated financial statement. The rates charged for such services were admittedly fair and reasonable.

Plaintiffs were advised as to the purpose of the accounting statement and were told it was possible a corporation would be formed to take over Kanne's businesses. Kanne testified, "I told Mr. Ryan I was trying to find some new money for my organization. * * * I visited with him about the possibility of incorporation and he suggested we try S.B.A. first."

It is defendant's contention that the evidence was sufficient to sustain a finding that plaintiffs were negligent in the investigation, preparation and submission of the accounts payable item in the financial statement rendered, that defendant relied thereon, to its detriment, and that it was entitled to recover the loss occasioned thereby. It contends, in view of the evidence as to the understood importance of the item of Accounts Payable—Trade, the assurance as to the work done in that regard, and the reliance placed on that item by the incorporators and the incorporation officials, it is unjust to minimize or overlook the plaintiffs' negligence or excuse it by any subsequent disclaimer.

Plaintiffs' financial statement, when submitted, was marked "Unaudited Statement." However, in the comments in the letter of submission attached thereto it is stated: "Accounts Payable—Trade. Confirmations were used to arrive at the balance due at the date of the balance sheet. The payee of each check issued during 1965 and the latter part of the calendar year 1964 was contracted to confirm if a balance was due at September 30, 1965. Also, a review of unpaid statements was made."

Although plaintiffs contended they were to investigate only checks banked after January 1, 1965, there is considerable testimony to the contrary and defendant contends the evidence shows they even failed to perform that task carefully. It appears plaintiffs did not attempt to process a large box of unfiled bills available to them. Ryan stated Kanne had a habit of taking the invoices or the statements and dropping them in a box behind his desk. He admitted he saw this box full of envelopes and stated, "we didn't attempt to open those envelopes and arrive at the accounts payable."

The first factual dispute as to the period to be covered in the examination of Accounts Payable—Trade was resolved by the court in favor of defendant. It contends the examination was to cover a twelve month period from September 30, 1964, to September 30, 1965. Kanne, Feldmann and Collison so testified. Ryan contended the examination was to be from January 1, 1965, to September 30, 1965, and admitted his investigation covered only that period. He testified: "We mailed a confirmation to the payee of each check from the period of January 1st of 1965 to September 30th, 1965" and "We did not look at the box of statements. I don't know what these invoices would say as to the trade accounts payable. The only explanation I can give is that this amount stated I did not find the names on the checks payable during this nine month period. I don't think I could answer that if I had looked at these statements I may well have learned the additional information so I wouldn't have made 73 different errors."

Mr. Feldmann had testified: "We found 73 accounts payable that were not included on his list. We made an amendment to the amounts he showed in 18 cases for a total of 91 changes. * * * Of the 73 accounts that Mr. Ryan omitted we had responses from 57 of them. We got an indication from approximately 30 suppliers *that no previous requests had been sent.*" (Emphasis added.)

The second factual issue as to plaintiffs' negligence in conducting their investigation

and examination of Kanne's Accounts Payable—Trade was resolved in favor of the defendant, and the legal and factual issue of liability to defendant, who was not in privity, was also resolved by the court in defendant's favor.

Pursuant to the submission of this financial statement, the defendant Kanne Lumber and Supply, Inc. was incorporated and took over the assets and liabilities of Kanne's lumber businesses. Defendant contends plaintiffs were aware of that purpose and plan when submitting the financial statement and failed to timely advise defendant of errors or discrepancies then known to them. When it became evident to the defendant corporation that the statement as to Accounts Payable—Trade was incorrect, it secured a re-audit of the lumber businesses. This audit disclosed a discrepancy of $33,689.22 in Accounts Payable—Trade. The amount paid for that audit was $1,380.

■ I. This being a law action tried to the court, it is not triable de novo here, but must be reviewed on errors assigned. Rule 334, Rules of Civil Procedure. The trial court's findings of fact thus have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. In determining whether the trial court's findings are supported by substantial evidence, we will not weigh the evidence or pass on the credibility of the witnesses. Phoenix v. Stevens, 256 Iowa 432, 435, 436, 127 N.W.2d 640, 642, and citations; Rule 344(f)(1), R.C.P. We must also construe the evidence in the light most favorable to the trial court's judgment. Staley v. Fazel Bros. Co., 247 Iowa 644, 648, 75 N.W.2d 253, 255, and citations; Phoenix v. Stevens, supra.

II. There is substantial evidence to support a finding that Kanne employed the plaintiffs to make an examination for the purpose of preparing a balance sheet with special attention to Accounts Payable—

Trade, that during the course of its preparation plaintiffs were advised that the purpose was to obtain additional capital or financing, that plaintiffs knew the balance sheet would be used to promote such financing through loans or incorporation and the sale of stock, that the balance sheet was to properly reflect the amount of the Accounts Payable—Trade, and under the direction of officers of Mid-States Enterprises, Inc., who guaranteed payment for such work, this sum was to be determined by contacting the payees of checks issued during a twelve month period from September 30, 1964, to September 30, 1965, that these services were performed at the instance and request of Kanne and Mid-States Enterprises, Inc., and for the benefit of Kanne Lumber and Supply, Inc., for which plaintiffs are entitled to reasonable compensation. The trial court found the services were rendered as alleged, that all defendants used the balance sheet to their advantage, and granted judgment in the sum of $3,434.67 against all defendants together with interest thereon as provided by law.

■ That there is substantial competent evidence in this record to sustain the findings as to the accounting claim is not denied, but the parties disagree as to whether the evidence in the record requires a finding that the accountants were so negligent in rendering their services as to make them valueless.

■ The itemized account introduced in evidence justifies the amount charged and verifies the time spent in performing the contract. Those items were not seriously attacked. Although the charge did substantially exceed the estimate of $500 to $750, plaintiffs were allowed to continue with the work after it became evident that the estimate was too low, and we are satisfied that the court, acting as a jury, did not err in finding plaintiffs' claim for services rendered under the contract was proven. It is also not denied that Kanne Lumber and Supply, Inc. used the plaintiffs' statement to form its corporate char-

acter and induce investors to buy stock therein.

In rejecting the valueless contention of defendants, the trial court apparently found the negligence of plaintiffs in investigating, preparing and submitting the financial statement caused no loss or damage to Kanne or Mid-States Enterprises, Inc., that no financial loss to them was claimed or shown, that in fact the audit was used to their advantage. The evidence shows that by the use of the audit Kanne sold his business as contemplated and Mid-States Enterprises, Inc. secured payment of its account against Kanne of $21,898.61. It would seem that as to these defendants the claim for services should not be denied, even though the negligence was greater than minor mistakes in the accounting. As to the defendant Kanne Lumber and Supply, Inc., which filed a counterclaim for damages, this item must be considered in determining its loss by relying on and using the accounting statement for which plaintiffs sought payment in quantum meruit. We shall deal later with this item in determining the extent of defendant's damages.

We are well aware of the decisions holding that when it appears the accountants are so negligent in the reporting of facts of such a serious character that the accounting failed in a fundamental and essential particular, the accountants have not furnished the expert and faithful services contracted for and are entitled to no compensation under the contract. See Board of County Com'rs of Allen County v. Baker, 152 Kan. 164, 171, 102 P.2d 1006, 1011, and City of East Grand Forks v. Steele, 121 Minn. 296, 299, 141 N.W. 181, 182, 45 L.R.A., N.S., 205. Both of these cases are actions for damages for breach of contract, and the evidence was clear that the loss to plaintiff was only the accountant's fee. Both recognize minor errors or inaccuracies in the report will not avoid the fee, and that under some circumstances substantial value from the audit may remain in spite of its errors. The trial court concluded that was the situation in the instant case and we accept that determination here.

In any event, we are not inclined to hold as a matter of law that these services were under the circumstances so negligently performed as to be valueless. The trial court's judgment upon the accountants' claim for services rendered against Kanne, Mid-States Enterprises, Inc., and Kanne Lumber and Supply, Inc. is affirmed in the sum of $3,434.67 plus interest and costs.

III. We next consider the counterclaim of Kanne Lumber and Supply, Inc. for damages due to the accountants' negligence in performing their contract, i. e., in conducting their examination of Kanne's lumber and supply business and in preparing and submitting a balance sheet which failed to reveal the true status of Accounts Payable—Trade to those who were relying thereon. The trial court found for Kanne Lumber and Supply, Inc., in the sum of $46,248.-16, but later reduced this amount to $38,-685.81.

The court found inter alia that, pursuant to plaintiffs' examination of Kanne's books and accounts, they prepared and submitted to defendants a balance sheet dated September 30, 1965, marked "Unaudited Statement", which contained various comments, one of which we have previously referred to regarding the method plaintiffs used to determine accounts payable.

The court also found that plaintiffs were advised and knew that, if the audit was favorable, the Kanne lumber businesses were to be incorporated and the corporation was to assume the assets and liabilities of those businesses, and that an officer of Mid-States did use the balance sheet which plaintiffs had submitted near the end of November 1965 to solicit subscribers to this corporation stock, and that they relied upon the balance sheet submitted for their examination.

It further found that after defendant's incorporation it became evident that the ac-

counts payable were in excess of the amounts shown on plaintiffs' balance sheet as it proceeded to pay them, that the corporation then employed an accountant to re-examine Kanne's accounts, especially Accounts Payable—Trade, and although the same method which plaintiffs said they used was followed, it showed a substantial difference in Accounts Payable—Trade from that shown on plaintiffs' balance sheet, and that the reasonable value of that service was $1,380.

It also found that plaintiffs had informed all the defendants and certain prospective investors that their statement was within $5,000 of being correct, but that the balance sheet of plaintiffs showing a net worth of $44,424.82 was erroneous and that there was in fact a deficit of $5,443.34.

The trial court concluded plaintiffs were negligent in their examination, preparation, and submission of the Kanne lumber companies' financial statement. Without an extended discussion of the evidence, we hold it is sufficient to sustain these findings and conclusions, especially in regard to the item of Accounts Payable—Trade and the knowledge of the intended use of the balance sheet by defendant corporation. In fact, plaintiffs do not seriously contend the court erred in these matters. Their principal contention is that as a matter of law they are not liable to defendant due to lack of privity, and they contest the items of damage considered by the court. They maintain at best they are liable only for the amount of their fee plus the cost of the second audit. We cannot agree with either contention.

■ IV. Plaintiffs' position is that an accountant is, as a matter of law, not liable in negligence to reliant parties not in privity, and they cite many cases in support thereof, including the leading case of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139. The reluctance of the courts to hold the accounting profession to an obligation of care which extends to all reasonably foreseeable reli-

ant parties is predicated upon the social utility rationale first articulated in that case. There the defendants negligently overvalued the company's assets in the balance sheet upon which the plaintiff creditors of the company subsequently relied. The wisdom of that decision has been doubted and criticized by law review writers, including 36 Iowa L.Rev. 319, 328. Also see 52 Marquette L.Rev. 158, and 18 DePaul L.Rev. 56. We are disposed to depart from that strict rule under the circumstance appearing therein. If such a rule were to be relaxed to hold accountants liable in negligence where the reliance is by actually known parties, such as that found in Rusch Factors, Inc. v. Levin, D.C., 284 F.Supp. 85, 91 (1968), we would not hesitate to embrace it. The court there felt a refusal to allow recovery to those so situated would constitute an unwarranted inroad upon the principle that the risk reasonably to be perceived defines the duty to be obeyed. We agree. When the accountant is aware that the balance sheet to be prepared is to be used by a certain party or parties who will rely thereon in extending credit or in assuming liability for obligations of the party audited, the lack of privity should be no valid defense to a claim for damages due to the accountant's negligence. We know of no good reason why accountants should not accept the legal responsibility to known third parties who reasonably rely upon financial statements prepared and submitted by them.

In Rusch Factors, Inc. v. Levin, supra, a case similar to the case at bar, a Rhode Island corporation sought financing from the plaintiff who requested a certified financial statement to measure the financial stability of the corporation. The defendant accountant prepared the statements which represented the corporation to be solvent by a substantial amount. In fact, the corporation was insolvent. Plaintiff relied on the statements and loaned the corporation considerable sums. Subsequently, the corporation went into receivership and plaintiff could only recover a portion of the sum

loaned to it. Damages for the loss as a result of its reliance upon the negligent misrepresentation of defendant was alleged, and the court, on motion to dismiss, held a cause of action had been stated. The court reviewed the authorities, which included Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425, and Investment Corp. of Florida v. Buchman, Fla.App., 208 So.2d 291 (1968), cited by plaintiffs herein, and held none of them dilute the strength of the proposition that an accountant should be liable in negligence for careless financial misrepresentation relied upon by actually foreseen and limited classes of persons.

In 53 Minn.L.Rev. 1375 (1969) appears a comment which discusses accountant liability to a third party for negligent misrepresentation and states that privity as a condition to recovery in tort has troubled the courts ever since the famous Winterbottom v. Wright, 152 Eng.Rep. 402 (1842), decision recognized the restriction. It observed the trend during the past thirty years has been to relax the requirement of privity in tort cases, at least where physical injuries have been involved and are reasonably forseeable. Third party financial losses, it pointed out, generally result from reliance on fraudulent or negligent spoken or written representations. Recognizing the potential of imposition of liability thereon, the courts have been reluctant to fully relax the privity requirement in this area, but have sought to impose liability only where the plaintiff owed a duty of care to a particular known reliant party rather than to a potentially larger unascertained class. It found no real conflict between Glanzer and Ultramares and agreed with Rusch that the facts were qualitatively distinguishable. In Rusch, supra, the plaintiff was not a member of an undefined, unlimited class of remote lenders, and potential equityholders not actually foreseen.

In Glanzer v. Shepard, supra, Judge Cardozo, in holding a defendant public weigher liable for his negligence in certifying incorrectly bean bag weights, reasoned the defendant knew that reliance on its certification by the purchaser was the "end and aim of the transaction" and designated the relationship as nearly contractual.

Thus, it was felt the test to be adopted is whether the third party to whom the accountant owes a duty of care is actually foreseen and a member of a limited class of persons contemplated. We agree and, in so doing, recognize that the same rule may be applicable in other recognized professions, such as abstracters and attorneys. It has been so applied. As bearing thereon, see Licata v. Spector, 26 Conn.Sup. 378, 225 A.2d 28 (1966); Biakanja v. Irving, 49 Cal.2d 647, 320 P.2d 16, 65 A.L.R.2d 1358 (1958); Lucas v. Hamm, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961); State Street Trust Co. v. Ernst, 278 N.Y. 104, 15 N.E.2d 416, 120 A.L.R. 1250; 41 St. John's L.Rev. 588 (1967); Journal of Business Law, 1966, at 190; 67 Columbia L.Rev. 1437, 1441 (1967).

This also seems to be the tenor of the Restatement of Torts 2d § 552, tentative draft number eleven, which states:

"(1) One who, in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered—

"(a) by the person or one of the persons for whose benefit and guidance he knows the information to be intended; and

"(b) through reliance upon it in a transaction in which it is intended to influence his conduct; * * *"

This being a case of first impression in Iowa, we are disposed to reject the rule

that third parties not in privity of contract or in a fiduciary relationship are always barred from recovery for negligence of the party issuing the instrument upon which the third party relies, to his detriment. It is unnecessary at this time to determine whether the rule of no liability should be relaxed to extend to all foreseeable persons who may rely upon the report, but we do hold it should be relaxed as to those who were actually known to the author as prospective users of the report and take into consideration the end and aim of the transaction. In other words, we believe the position announcement in the Restatement proposed draft may be accepted to the extent that it extends the right to recover for negligence to persons for whose benefit and guidance the accountant *knows* the information is intended, especially when the party to be benefited is identified before the statement or report is submitted by the accountant.

Here there is no question but what Mid-States Enterprises, Inc., Kanne, and the contemplated Kanne Lumber and Supply, Inc. were known by plaintiffs as prospective users of their financial report both at the time of the contract and when the report was submitted. By plaintiffs' action against Kanne Lumber and Supply, Inc., they acknowledge this statement was relied upon and used by the corporation as contemplated in taking over the Kanne lumber businesses and in its efforts to secure stockholders' subscriptions. The evidence is substantial that plaintiffs attended meetings of the corporation officers where payment of Accounts Payable—Trade was considered. The witness Collison stated, "The purpose of the corporation was to take over Kanne Lumber and Supply. Mr. Ryan attended the meeting of some of the prospective corporate people. According to my recollection, he explained the balance sheet to them. To my recollection he never told these people that the balance sheet was in error." Under these circumstances we think the trial court was correct in holding plaintiffs liable to the counterclaimant

Kanne Lumber and Supply, Inc. Unless for some valid reason shown by plaintiffs that they are relieved of that liability, the measure of damages must be the loss suffered by it as a result of the reliance upon that statement or the part thereof represented as correct.

Plaintiffs argue errors in their financial statement were due to Kanne's failure to cooperate as agreed, to the demand for haste and false information furnished as to various items, and that the proximate cause of defendant's injury was not their failure to carefully check Accounts Payable—Trade. They further contend defendant was guilty of contributory negligence in paying accounts after it was apparent an error was made and plaintiffs had advised payment be delayed until a recheck was made. Defendant disputed each of these contentions and the trial court, acting as a jury, rejected them and found that plaintiffs' negligence was the proximate cause of defendant's damage. As to these matters the evidence is conflicting.

Generally questions of negligence, contributory negligence, and proximate cause are for the jury, and it is only exceptional cases that they may be decided as matters of law. Rule 344(f) (10), R.C.P. We believe this is not such an exceptional case and abide by the trial court's finding thereon.

There is considerable evidence that Kanne provided access to all his records and withheld only one note payable from plaintiff confirmation because the creditor suffered from a heart ailment. It appears that plaintiffs examined only three unpaid invoices, when many others were in a box near the desk, and that over 73 accounts payable were not considered or confirmations obtained thereon contra to the statement in the financial report. Ryan stated, "We went through the one file which Mr. Kanne had * * * labeled unpaid invoices. In this file there were approximately three unpaid invoices." Feldmann said, "There were approximately 180

accounts payable due and owing from Kanne at that time. We made a change in about 50% of the accounts payable."

It further appears plaintiffs filed no pleading setting up the defense of contributory negligence. In any event, they failed to convince the court that anything defendants did was a proximate cause of their damage. Plaintiffs' effort to warn defendant of possible error came too late, as defendant had already assumed the liability for Kanne's debts and concededly had paid some of those bills before becoming aware that the Accounts Payable— Trade was not correct. We have examined the evidence with care and find this assignment without merit.

■ V. There is no merit in plaintiffs' contention that the court erred in not finding them relieved of liability when the issued financial statement as to the business operations was not certified and upon which they affirmatively stated they expressed no opinion. Although in this profession a distinction is made between certified audits where greater time and effort are expended to verify book items, and uncertified audits where greater reliance is placed on book items, it is clear to us that accountants, or any other professional persons, must perform those acts that they have agreed to do under the contract and which they claim have been done in order to make the determination set forth and presented in their report. Their liability must be dependent upon their undertaking, not their rejection of dependability. They cannot escape liability for negligence by a general statement that they disclaim its reliability. This matter was well discussed in 52 Marquette L.Rev. 158, 164. Therein it is stated that liability for professional negligence to third parties will not automatically result in injustice and financial ruin being levied upon accountants. Rather, the result will be to insure the use of professional standards. If, therefore, a party limits the investigation of an independent accountant, or if goods or work in progress

cannot actually be seen, the accountant can note this in his report and thus limit the basis upon which an aggrieved party can obtain relief against him. It would at least indicate, as to certain items of a financial statement, that the accountant may thus escape liability for negligence if he does not certify the audit. As to other items which he agreed to and states he did investigate, but did not, we hold the lack of certification will not absolve him from liability. He must perform as agreed whether the work is certified or not. This being so, we have here fact questions as to the substance of the agreement between the parties, as to the care exercised in its performance, and as to the representation made, rather than whether the report was certified or uncertified. See C.I.T. Financial Corp. v. Glover, 2 Cir., 224 F.2d 44 (1955).

■ Factually, the court found the plaintiffs had specifically contracted to determine in an agreed manner the amount of Kanne's Accounts Payable—Trade, and had assured its correctness within $5,000. The court did not hold them to strict accuracy as to other items in the financial statement, but found under the agreement that the plaintiffs were to accept the company's book figures and information furnished by Kanne, such as notes payable, accounts receivable, and work in process. The extent of this finding is evident in the court's amended judgment where it removed from liability a note improperly listed as Accounts Payable—Trade, as well as other minor items. Except, then, as to the item of Accounts Payable—Trade, the claim of "Unaudited Statement" was accepted by the court as effective to bar plaintiffs' liability to defendant. However, the determination that plaintiffs failed to properly perform the duty assumed under the contract as to Accounts Payable—Trade is binding upon us, and the court's conclusion that the accountants could not escape liability for negligence in that regard with an "Unaudited Statement" notation on the financial report is right. Although the

court did not follow our rule and separate its findings of fact from its conclusions of law (Rule 179, R.C.P.), there is substantial evidence to support those determinations, and we accept them as correct both as to fact and law. In further support thereof, see State Street Trust Co. v. Ernst, supra, 278 N.Y. 104, 15 N.E.2d 416; C.I.T. Financial Corp. v. Glover, supra; 41 St. John's L.Rev. 588, 599; 18 DePaul L.Rev. 56, 83.

■ VI. Plaintiffs' further contention that defendant was not the real party in interest, but that damages if any were to the stockholders who invested in the corporation on the basis of this financial statement, is also without merit. Generally every action must be prosecuted in the name of the real party in interest. Rule 2, R.C.P. Of course, one may question whether the claimant is the real party in interest when it is necessary to protect himself from "harassment, annoyance, or vexation at the hands of other claimants to the same demand or for the same cause, or to protect himself from another suit on the same cause by a different party * * * or in order that defendant may avail himself of the defense and counter claims which he has against the real party in interest * * * or in order that defendant's payment to plaintiff or plaintiff's recovery as against him will fully protect him from claims of third persons or in the event of another action on the same cause." 67 C.J.S. Parties § 10, p. 910; Grings v. Great Plains Gas Co., 260 Iowa 1309, 1321, 152 N.W.2d 540, 546.

In interpreting Rule 2, R.C.P., we have often stated that a party is the real party in interest whenever a payment to him would protect the defendant from the claims and harassment of third parties. Archibald v. Midwest Paper Stock Co., Iowa, 158 N. W.2d 739, 742, and citations. This counterclaim is by the corporation, not its stockholders. The defendant corporation took over the assests and liabilities of Kanne upon the representation of plaintiffs and,

because of the error in Accounts Payable—Trade, had to pay approximately $33,000 more to creditors than it understood was due. Its assets were reduced by that sum and, of course, the stockholders' equity was reduced accordingly. If it recovers in this action, the stockholders' equity will be restored. Furthermore, to require the stockholders individually to sue here would permit "piecemeal" litigation to resolve the damage issue. This, of course, is not necessary or required.

Both this court and the federal court practice indicates there is a definite trend away from "piecemeal" determination of litigation. Van Wie v. United States (D. C.), 77 F.Supp. 22; Woodbury v. Porter (8th Cir.), 158 F.2d 194; Archibald v. Midwest Paper Stock Co., supra. We adhere to that rule now and hold Kanne Lumber and Supply, Inc., was a real party in interest and, although the stockholders may have individual grievances, their interests in the stock value of defendant corporation will be sufficiently protected in this action.

VII. We come now to plaintiffs' contention that the court erred in computing the damages, if any, that are due Kanne Lumber and Supply, Inc.

The trial court clearly intended to restrict the damages to the difference between the plaintiffs' representation of the Accounts Payable—Trade and the correct amount as shown by the re-audit, less $5,000 plaintiffs retained as a margin of error, plus the cost of the new audit. It did not include in its final judgment the sum of $7,026.28, which represented a note payable, and $536.07, which represented other accounts in the statement outside the accounts payable item.

It is reasonable to believe that the trial court concluded the evidence of negligence in computing other items of the financial statement was insufficient. Also, it may have felt the "Unaudited Statement" designation was sufficient to relieve plaintiffs from liability for all errors in the statement

except that of Accounts Payable—Trade, which was handled specially as a separate undertaking. In any event, we here consider only the loss occasioned by the accountants' misrepresentations in Accounts Payable—Trade. Such loss, we hold, was direct, not remote.

Plaintiffs argue the correct measure of damages in such a matter is restricted to the costs of the original financial statement and the cost of the re-audit. The basis of this restriction, they say, is that a loss to a party not in privity was not a circumstance contemplated by the parties to the contract and that their negligence as a matter of law was not a proximate cause of the corporation loss. As indicated in Divisions II and IV hereof, we cannot agree. Plaintiffs cite City of East Grand Forks v. Steele, 121 Minn. 296, 141 N.W. 181, and Board of County Com'rs of Allen County v. Baker, 152 Kan. 164, 102 P.2d 1006. Each of these cases refers to the general rule that the measure of damages for defective performance of a contract is the difference in value between what is tendered as performance and what is due as performance under the contract, and state that if what is tendered is unsuitable for the purpose contemplated, the measure of damages may be the amount required to remedy the defect. In other words, if from a lack of skill or from negligence an expert accountant fails to disclose the true status of accounts he is employed to audit, he is liable for the damages naturally and proximately resulting from such failure. To the same effect, see Atlas Security Co. v. O'Donnell, 210 Iowa 810, 811, 232 N.W. 121, 122.

■ There seem to be few, if any, decisions that pass squarely upon the measure of damages when the action is brought by one not in privity, but the implication is that if the party damaged by reliance upon the accountants' statement and his interest in the statement was actually known when the contract was made and the statement issued, this circumstance would tend to show the contingency was in the contempla-tion of the parties and the negligence of that party was a proximate cause of the loss. As bearing thereon, see Rusch Factors, Inc. v. Levin, supra, 284 F.Supp. 85 (1968), where the court refused to dismiss plaintiff's petition which alleged a loss of $121,000. This sum represented the difference between the amount of a loan of $337,000 made to a corporation pursuant to a financial statement prepared by defendant accountant as required by the plaintiff and the sum recovered in the receivership when the corporation failed. Defendant's statement erroneously showed the corporation to be solvent. Although the court there did not pass directly on the question of damages, it did not reject that measure as inappropriate or unfair.

We conclude the measure of damages allowable to a party not in privity against a public accountant for negligently performing his contract to prepare and issue a statement of accounts should be determined by the following test. If the statement of account was incorrect and untrue, and the known third party relying thereon sustained a loss resulting from the issued statement of account, the accountant must be held to respond in damages and such damages should be those caused by the negligent act and which were reasonably contemplated by the parties and directly connected with it, similar to other third party interest situations. No other measure of damage would appear adequate or just.

Of course, if the negligence was the proximate cause of the damage to the injured party, recovery of contemplated losses would fall in the well established doctrine of proximate causation applicable to both willful and negligent acts. Atlas Security Co. v. O'Donnell, supra.

In conclusion, we hold those parties who were timely identified as reliants on a certified public accountant's statement of accounts are entitled to the same measure of damages that apply to those in privity of contract. Defendant here was found to be

a contemplated party to the contract and was entitled to the same measure of damages for breach of contract as that available to Kanne and Mid-States Enterprises, Inc. as parties in privity.

The amount necessary to place the defendant corporation in the position it would have been had the Accounts Payable—Trade item been correct within the warranty should then be the amount of recovery here. As bearing on this problem, see also 25 C.J.S. Damages §§ 46 and 76, pp. 755, 858; 1 Am.Jur.2d, Accountants, § 19, p. 367; Williston on Contracts, 3d Ed., Vol. 11, § 1411; 53 Minn.L.Rev. 1375; 12 Vanderbilt L.Rev. 797, 818–819; 36 Fordham L.Rev. 191; 67 Columbia L.Rev. 1437; 36 Iowa L.Rev. 191; annotation, 54 A.L.R. 2d 324, 345; annotation, 28 A.L.R.2d 891, 910 (abstracters); but see Investment Corp. of Florida v. Buchman, supra, 208 So.2d 291; Bancroft v. Indemnity Ins. Co., D.C., 203 F.Supp. 49, on rehearing affirmed, 5 Cir., 309 F.2d 959; Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N.W.2d 364, 54 A.L.R.2d 316; Atlas Security Co. v. O'Donnell, supra; Rusch Factors, Inc. v. Levin, supra; Randall v. Paine-Nichols Abstract Co., 205 Okl. 430, 238 P.2d 319, 28 A.L.R.2d 887; Thomas v. State, etc., 251 Miss. 648, 171 So.2d 303, 13 A.L.R.3d 1030 (notary public), and annotations on measure of damages for false notary certificate, 13 A.L.R.3d 1039; Glanzer v. Shepard, supra, 233 N.Y. 236, 135 N.E. 275; American Cas. Co. of Reading, Pa. v. Memorial Hosp. Ass'n, D.C., 223 F.Supp. 539 (architect); Craig v. Everett M. Brooks Co., 351 Mass. 497, 222 N.E.2d 752 (engineering firm) (1967); Lucas v. Hamm, supra, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, cert. denied 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (attorney) (1961).; Licata v. Spector, supra, 26 Conn.Supp. 378, 225 A.2d 28 (1968). See also annotations at 65 A.L.R.2d 1363, and 2 Land and Water L. Rev. 379 (Wyoming) (1967); Meek, Liability of the Accountant to Parties other than his Employer for Negligent Misrepresentation, 17 Wis.L.Rev. 371; Duro Sportswear v. Cogen, Sup., 131 N.Y.S.2d 20.

█ In its computations the trial court apparently did not restrict the differences in the financial statements to Accounts Payable—Trade, and thus erred in arriving at the correct damage due defendant. From the record, in defendant's Exhibit 21, we note the difference in the Carroll lumber yard account was $32,382.87, and in the Breda yard account $1,306.35, or, in other words, the plaintiffs' financial statement showed Accounts Payable—Trade was $33,689.22 less than the corrected report. From this figure we also take $5,000, which the court found the plaintiffs had limited its warranty of correctness, and add thereto the fair and reasonable costs of the corrected report, as found by the court, in the sum of $1,380, and arrive at the sum of $30,069.22. This we hold represents the loss to defendant attributable to plaintiffs' negligence in preparing and submitting the statement as to Accounts Payable—Trade, and the judgment on the counterclaim of Kanne Lumber and Supply, Inc., must be modified to so provide.

VIII. Finally, plaintiffs claim the trial court erred in relying upon an improper authority and in going outside the record for the basis of its ultimate findings and conclusions.

█ Although not mentioned in the findings, conclusions, order and decree of the trial court, plaintiffs state the judge had "indicated" that in arriving at his decision he relied in part on an article appearing in the February 1967 issue of a magazine, the National Public Accountant. In fairness, the trial judge offered to and did file the article in this matter and it is set out in full in the record. Plaintiffs state those publishing this periodical are not certified accountants and contend they could not qualify as experts in the field of certified public accounting. They contend it was improper for the trial court to read the article and to consider it and that it was irrelevant to the issues before the court. They do not designate the claimed issues affected. They rely upon cases which consider Rule 194, R.C.P., where a jury improperly views property or scenes of accidents and considers that observation as evidence, and Hampton v. Burrell, 236 Iowa 79, 17 N.W. 2d 110, as to the right of a judge acting as a jury to base his judgment on his personal observation. We do not find these cases applicable. It appears that consideration given this article, if any, was on a law issue, not a factual issue. Defendant contends there is nothing in this article which bore on the issue of fact involved, but note it did discuss the procedures adopted by another state board in preparing unaudited financial statements and so-called dis-

claimers which may affect liability for errors in the statements. Apparently it is more closely akin to legal publications and law review articles, and we certainly do not wish to discourage trial judges from reading and considering such legal publications as an aid in arriving at their decisions.

Perhaps the trial court did not adequately follow Rule 179, R.C.P., which provides in part: "(a) The court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, shall find the facts in writing, separately stating its conclusions of law; and direct an appropriate judgment. * * *."

Had it carefully followed this procedure, we could be more certain as to whether the publication was considered as evidence or as bearing on the legal liability for statements marked "unaudited."

Neither party requested the court to separate its findings of fact and its conclusions of law, but we are convinced the article had nothing to do with the factual issues involved herein.

In any event, we are satisfied there is no showing that the reading and considering of this article did influence the decision or could have done so, and we find at best no prejudice resulted from its consideration herein. Although it is doubtful this and the late conformance report were entitled to our consideration, as a matter of grace we have considered both and find therein no basis for a reversal.

IX. Having carefully reviewed this record and considered the various issues presented by this appeal, including the new and troublesome issue of damages to a reliant injured party not in privity for the negligent performance of an accounting contract, we affirm on plaintiffs' action and affirm and modify on defendants' counterclaim. The cause is remanded for modification in accordance with this opinion.

Costs are to be divided one half to James A. Kanne, Mid-States Enterprises, Inc., and Kanne Lumber and Supply, Inc., and one half to Charles L. Ryan and Marvin G. Snyder.

Modified and affirmed.

All Justices concur except LeGRAND, J., who dissents.

## SUPPLEMENTAL OPINION

LARSON, Justice.

The opinion filed herein on September 5, 1969, appearing in 170 N.W.2d 395, is hereby amended and supplemented as follows:

In our consideration of defendants' Exhibit 21 from which we determined the net difference between the Ryan report and the re-audit regarding Accounts Payable—Trade was $33,689.22, we were not aware that Item No. 115 included a Schleisman note payable in the sum of $7,026.28. We had agreed with the trial court that this item was properly designated a note payable and not properly listed as Accounts Payable—Trade. Thus, the net difference between the Ryan report and the re-audit must be reduced by $7,026.28 and the damage award of $30,069.22 must be modified to reflect that change. The judgment heretofore rendered is reduced to $23,042.94 and the petition for rehearing is denied.

Modified and affirmed.

All Justices concur.