**Warren PAHRE, et al., Plaintiffs,**

**v.**

**AUDITOR OF the STATE of Iowa and Industrial Loan Thrift Guaranty Corporation of Iowa, Defendants.**

**INDUSTRIAL LOAN THRIFT GUARANTY CORPORATION OF IOWA, Appellant,**

**v.**

**REESE & COMPANY, P.C., and Bill M. Reese, C.P.A., Appellees.**

No. 87–741.

Supreme Court of Iowa.

April 13, 1988.

Thomas L. Flynn of Wimer, Hudson, Flynn & Neugent, P.C., Des Moines, for appellant.

Richard A. Steffen and Richard N. Winders, Des Moines, for appellees.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

First Security Acceptance Corporation, an industrial loan company under Iowa Code chapter 536A (1981), became insolvent in 1982. Investors who lost money on thrift certificates with First Security looked for payment to the guarantor, In-

---

dustrial Loan Thrift Guaranty Corporation, Iowa Code ch. 536B (1981). The guaranty corporation paid the investors, then sued First Security's accountants, Reese and Company, P.C., and Bill M. Reese, C.P.A. ("Reese"). Financial statements prepared by Reese overstated the financial health of First Security, the guaranty corporation claimed, and caused it to admit First Security to membership. The district court granted Reese's motion for summary judgment on the ground that Reese owed no duty to the guaranty corporation.[1] We affirm.

The facts are largely undisputed. Reese prepared audited financial statements for First Security as of September 30 for the years 1974 through 1981. Bill Reese testified that he knew the financial statements for First Security were being filed by it with the state auditor. *See* Iowa Code §§ 536A.14, .15 (1981) (reports to be filed with auditor). (These reports are now required to be filed with the superintendent of banking. *See* Iowa Code §§ 536A.14, .15 (1987).) Reese did not, however, know the reports would be submitted by First Security to the loan guaranty corporation in its attempt to gain membership in it. In fact, the guaranty corporation did not exist until 1981, following enactment of Iowa Code chapter 536B in 1980.

The purpose of the guaranty corporation is stated by section 536B.3 (1981):

It is the purpose of the guaranty corporation to guarantee payment of thrift certificates issued by a member up to ten thousand dollars for each account, subject to the limitations of this chapter.

First Security's application for membership with the guaranty corporation was made on July 6, 1981, and it was accepted on July 19. It is undisputed that the guaranty corporation examined the financial reports prepared by Reese in making the decision to admit First Security to membership in the corporation.

For summary judgment purposes, we will assume there were disputed fact issues respecting Reese's alleged negligence in the preparation of the reports. Disposition of the case on appeal, however, turns on a question of law. Did Reese owe a duty to the guaranty corporation to provide accurate reports when Reese and the guaranty corporation had no direct contact or privity?

*Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931), generally considered to be the landmark case in the area, held that no duty existed unless the party relying on the report is in a position of privity with the accountant. *Id.* at 176–89, 174 N.E. at 444–49. Later cases, as well as the Restatement of Torts and most writers, have taken a more liberal approach. *See, e.g., Larsen v. United Federal Sav. & Loan Ass'n*, 300 N.W.2d 281, 286 n.1 (Iowa 1981), and authorities cited. Under these authorities, third parties may recover against the accountant if they fall within certain categories of potential users of the information.

The Second Restatement of Torts, for example, provides:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3) [which has no application here], the liability stated in Subsection (1) is limited to loss suffered

(a) *by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it;* and

---

1. Individual investors also sued Reese, and all of the cases were consolidated in the district court. The individual investors' cases were also dismissed on summary judgment motions, but they did not appeal.

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977) (emphasis added).

This court adopted the Restatement rule in *Ryan v. Kanne*, 170 N.W.2d 395, 403 (Iowa 1969), where we said: "[W]e believe the position announce[d] in the Restatement proposed draft [which is identical to present section 552] may be accepted to the extent that it extends the right to recover for negligence to persons for whose benefit and guidance the accountant *knows* the information is intended, especially when the party to be benefited is identified before the statement or report is submitted by the accountant."

We did not set the outer perimeters of liability in *Ryan*, because in that case the accountant actually knew the information would be used by the third party. We said:

It is unnecessary at this time to determine whether the rule of no liability should be relaxed to extend to all foreseeable persons who may rely upon the report, but we do hold it should be relaxed as to those who were actually known to the author as prospective users of the report and take into consideration the end and aim of the transaction.

*Id.*

The question posed by *Ryan*, whether a duty is owed to merely foreseeable parties, is answered to a large extent by the wording of the Restatement itself, which states the duty extends only to "the person or one of a limited group of persons for whose benefit and guidance [the accountant] intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552(2)(a).

Further refinement in the rule is provided by comment *h* to section 552 which states, in part:

Under this Section, ... it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation *intends to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.*

(Emphasis added.)

In discussing the present status of cases based on negligent representation, one writer has said:

[L]iability has not in fact been extended much beyond that indicated in the Second Restatement of Torts, if any. This means that foreseeability of harm is not the test. The plaintiff must have been a person for whose use the representation was intended, and it is not enough that the defendant ought reasonably to have foreseen reliance by someone such as the plaintiff. Also, if the plaintiff is not an identifiable person for whose benefit the statement was intended, he must at least have been a member of some very small group of persons for whose guidance the representation was made.

*Prosser and Keaton on the Law of Torts* § 107, at 747 (1984).

In *Beeck v. Kapalis*, 302 N.W.2d 90, 97 (Iowa 1981), a negligent information case, we said that, "[t]o protect defendants, the group to whom the defendant may be liable does not include all persons who reasonably may be expected to use the information. Rather, a defendant is only liable to users of the information who are actually foreseen, taking into consideration the end and the aim of the transaction." (Citation omitted.)

In urging a wider scope of duty in negligent information cases, the guaranty corporation relies on this court's decision in *Larsen v. United Federal Savings & Loan Association*, 300 N.W.2d 281 (Iowa 1981). There, we held that a savings and loan

association which had appraised a house was liable to the buyer of the house for negligence in failing to report structural defects. The inspection was made for the savings and loan association by an in-house appraiser, but the Larsens used the report in making their decision to buy the house. The appraisal fee was also paid by them. We held in *Larsen* that the appraisers owed a duty to the buyers, stating that "the key inquiry is whether [the lender] knew or *should have foreseen* that Larsens would rely on its appraisal." 300 N.W.2d at 286 (emphasis added).

In the present case, the plaintiff guaranty corporation points to this "foreseen" language and suggests that the guaranty corporation would fall within the coverage of such a rule; when the reports were filed with the auditor, it should have been foreseen by Reese that another agency such as the guaranty corporation would use them. We do not agree that *Larsen* may be applied so broadly. First, there was a question in *Larsen* as to whether the buyers of the house were in fact only third parties to the appraisal contract; because the appraisal was made by an in-house employee of the lender, we suggested that the Larsens might actually have stood in a position of privity. *Id.* at 287. Moreover, Larsens were shown on the appraisal report as the "client" and they paid for the appraisal service.

The nature of the transaction in *Larsen* must also be distinguished from the present case; in *Larsen*, the very "end and aim of the transaction" was to enable the Larsens to purchase the house through the loan, using the appraisal report. In contrast, the end and aim of the report in the present case could be said to be an assistance to First Security in the internal management of its affairs and to allow it to comply with Iowa Code sections 536A.14 and .15 by filing copies with the auditor. It cannot reasonably be said, however, that the end and aim of the report was to allow use by filing with an entity such as guaranty corporation, whose existence was unknown. It should be noted that Iowa Code section 536A.15 (1981) provided that such reports were confidential and could not be disseminated to the public. Under these circumstances, it would not be reasonable to assume that other parties beyond First Security and the auditor would be intended users of the information.

In the present case, we do not believe that the guaranty corporation was within the class of parties identifiable by Reese at the time the audits were made, or a member of the class intended by Reese to be a user of it under the Restatement rule and the holdings of our prior cases. We believe, accordingly, that the district court was correct in dismissing the petition on the basis of a lack of duty.

AFFIRMED.