No. 88-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

EUGENE B. THAYER and MONTANA
MERCHANDISING, INC.,

    Plaintiff and Respondent,

-vs-

ROBERT G. HICKS, JR. and SEMAN,
KOONTZ, JACOBSEN & BLOOMGREN, a
Partnership,

    Defendants and Appellants.



APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Robert J. Emmons, Great Falls, Montana

    For Respondent:

        Joe R. Bottomly, Great Falls, Montana

    For Amicus Curiae:
        Ward Shanahan, Helena, Montana (Am. Inst. CPA's)

Submitted:  November 2, 1989

Decided:  May 25, 1990

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Montana Merchandising, Inc. brought this action against the accounting firm of Seman, Koontz, Jacobsen & Bloomgren (Bloomgren) in the District Court of the Eighth Judicial District, Cascade County, claiming damages arising from Bloomgren's negligent performance of an audit of Intermountain Merchandising, Inc., and its negligent misrepresentation of financial information in that audit. By a vote of 9 to 3, a jury returned a verdict in favor of Montana Merchandising in the amount of $339,308. Bloomgren appeals. We affirm in part and reverse in part.

The following issues are raised on appeal:

1. To what extent does an accountant owe a duty of care to third parties with whom he is not in privity?

2. Did the District Court err in instructing the jury that an accountant's failure to comply with generally accepted auditing standards (GAAS) or generally accepted accounting principles (GAAP) constitutes negligence as a matter of law?

3. Did the District Court err in instructing the jury that, in a negligent misrepresentation action, reliance on representations is presumed?

4. Did the District Court err in submitting the issue of causation to the jury?

5. Did the District Court err in failing to reduce the jury verdict?

6. Did the District Court err in granting pre-judgment interest to Montana Merchandising?

7. Did the District Court err in its award of costs to Montana Merchandising?

Montana Merchandising, Inc. is a Great Falls grain-trading company established in 1973 by Eugene Thayer, its president and majority shareholder. In 1974, Thayer and Robert Hicks, Jr. formed another corporation called Intermountain Merchandising, Inc. Hicks

was the president and active manager of Intermountain. Thayer, only a passive investor in the corporation, was vice-president. Gary Black was secretary-treasurer. Black, a certified public accountant, was also secretary-treasurer and controller of Montana Merchandising.

Thayer and Hicks each contributed $5,000 to Intermountain's formation. Intermountain then borrowed $25,000 from First National Bank. With this money, Intermountain purchased a bookstore, Reader's World. In 1975, Intermountain founded a Hallmark shop, known as Tiffany's Attic. In 1976, it acquired two other separate corporations, Yellowstone Merchandising and Security Equipment. Yellowstone sold retail art supplies and office equipment. Security Equipment sold handguns and law enforcement supplies.

In January, 1977, Intermountain purchased Skyline Distributing, a wholesale art, craft and hobby supplier. With this purchase, Intermountain intended to greatly expand its operations. The Skyline inventory cost $300,000.

In early 1977, Intermountain's debt to the bank, which was personally guaranteed by both Thayer and Hicks, totalled approximately $400,000. The corporation was highly leveraged and needed an infusion of capital to service the debt. Because Hicks was unwilling or unable to supply any additional capital, he proposed that Thayer purchase his interest in the corporation in exchange for cash and Reader's World, one of the more successful of Intermountain's assets. The parties contemplated that, after Thayer acquired Hicks's stock, Montana Merchandising would supply capital through loans to or investments in Intermountain.

In order to determine the value of Hicks's stock and the financial condition of the corporation, Allen Bloomgren, a partner in the defendant accounting firm, was hired to perform an audit of Intermountain. The parties dispute whether Bloomgren was told that Montana Merchandising would become financially involved with Intermountain after Thayer bought Hicks out.

In June, 1977, prior to the formal completion of the audit, Montana Merchandising advanced $140,000 to Intermountain to help

fund its operations. In July, 1977, Bloomgren communicated his preliminary audit figures to Thayer, Black and Hicks. The preliminary figures showed that Intermountain was a going concern. Based on these figures, Montana Merchandising loaned Intermountain an additional $47,000.

Bloomgren completed the audit on August 15, 1977, giving a "clean" opinion on Intermountain's balance sheet. This "clean" opinion endorsed the figures contained in the balance sheet without disclaimers or reservations.

The audit showed that Intermountain had a positive shareholder equity of $112,608 and working capital of $393,141. The equity figures were higher than the Intermountain's previous equity balance of $89,654, which had been claimed in Intermountain's March, 1977, unaudited financial statements. The figures thus indicated that Intermountain was not only solvent, but profitable.

The audit figures were relied upon in going forward with the planned buy out of Intermountain. In exchange for his interest in the company, Hicks received both Reader's World and a note from Thayer in the amount of $52,445. In January, 1978, Thayer transferred the stock to Montana Merchandising. Montana Merchandising assumed the $52,445 debt to Hicks.

The expansion plans proceeded and Montana Merchandising advanced additional funds to Intermountain. It also signed guarantees for loans Intermountain received from a local bank. These guarantees, which included money borrowed by Intermountain in previous years, totalled $765,000. Montana Merchandising's total risk exposure on Intermountain's behalf increased to $1,300,000.

In 1978, Montana Merchandising engaged Junkermier, Clark, Campanella, Stevens, P.C. to conduct a second audit of Intermountain. Gary Hill, the accountant who performed this second audit, found several material errors on the audit completed by Bloomgren. Among the errors discovered by Hill was an overstatement of the value and quantity of Intermountain's inventory by an estimated $153,000, a failure to identify almost

4

$14,000 in unrecorded liabilities, the improper identification of long-term and short-term debt and the failure to offset a $40,000 loss to subsidiaries. Hill testified that, once he corrected the errors, he found that Intermountain's value was a negative amount. In other words, at the time of the Bloomgren audit, Intermountain was an insolvent corporation.

Upon receiving Hill's audit report, Montana Merchandising acted to mitigate its damages. It ceased buying inventory and attempted to sell the remaining warehouse goods. Ultimately, it hired a professional to conduct a liquidation sale.

Through these efforts, Montana Merchandising reduced Intermountain's bank debt from $765,000 to $338,000. At that point, the bank called the remainder of the loans due. Montana Merchandising honored its guarantees on the notes.

In 1979, Thayer and Montana Merchandising brought suit against Hicks and Bloomgren, alleging that the accountant was negligent in its audit of Intermountain. Montana Merchandising claimed that, had Bloomgren properly performed the audit, it would never have purchased the corporation's stock, nor would it have advanced money directly to or guaranteed loans on behalf of Intermountain. Prior to trial, Hicks, Thayer and Montana Merchandising settled their claims between one another.

Trial proceeded between Montana Merchandising and Bloomgren. Following three weeks of testimony, the jury returned a verdict in favor of Montana Merchandising in the amount of $339,308. Bloomgren appealed to this Court.

I.

To what extent does an accountant owe a duty of care to third parties with whom he is not in privity?

While some jurisdictions adhere to the rule that an accountant may not be held liable in negligence to parties with whom he is not in privity of contract, e.g., Citizen's Nat'l Bank of Wisner v. Kennedy and Coe, 441 N.W.2d 180 (Neb. 1989); Robertson v. White, 633 F.Supp. 954 (W.D. Ark. 1986)(applying Arkansas law), the modern trend allows recovery to non-clients in certain instances. The

5

question most courts grapple with today is not whether an accountant owes a duty of care to third parties but, rather, just how far the duty extends. In dealing with this issue, courts have employed three different approaches. The first approach limits the duty of care to those third parties who are actually known to the accountant, the second limits the duty to those who are actually foreseen and the third expands the duty to all those who are reasonably foreseeable.

Ultramares Corp. v. Touche, 174 N.E. 441 (N.Y. 1931), authored by Justice Cardozo, is the seminal case on accountant liability. Fearing that disastrous consequences would result if accountants were exposed to "liability in an indeterminate amount for an indeterminate time to an indeterminate class," Ultramares, 174 N.E. at 444, Cardozo limited an accountant's duty of care to those in privity of contract with the accountant or to those whose "bond was so close as to approach that of privity. . . ." Ultramares, 174 N.E. at 446.

The Court of Appeals of New York recently reaffirmed and clarified the concept of "near privity" enunciated in Ultramares. In Credit Alliance Corp. v. Arthur Andersen & Co., 483 N.E.2d 110, 115 (N.Y. 1985), the Court held that "a relationship 'so close as to approach that of privity' [Ultramares] remains valid as the predicate for imposing liability upon accountants" for the negligent preparation of financial reports relied upon by noncontractual third parties. The Court delineated three factors to guide courts in determining whether a "near privity" bond exists.

> (1) [T]he accountants must have been aware that the financial reports were to be used for a particular purpose or purposes;
>
> (2) in the furtherance of which a known party or parties was intended to rely; and
>
> (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the

accountants' understanding of that party or parties' reliance.

*Credit Alliance*, 483 N.E.2d at 118. Before an accountant may be held liable to a non-client third party, all three factors must exist.

Some jurisdictions have adopted the near privity rule of *Credit Alliance*. E.g., *Idaho Bank & Trust Co. v. First Bancorp of Idaho*, 772 P.2d 720 (Idaho 1989); *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155 (7th Cir. 1987) (applying Indiana law). Others, however, have applied broader rules in determining the extent an accountant's duty of care to non-clients. The majority follow the approach set out in the Restatement (Second) of Torts § 552 (1977).[1] E.g., *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So.2d 9 (Fla. 1990); *First Nat'l Bank of Bluefield v. Crawford*, 386 S.E.2d 310 (W.Va. 1989); *Raritan River Steel v. Cherry, Bekaert & Holland*, 367 S.E.2d 609 (N.C. 1988); *Pahre v. Auditor of State*, 422 N.W.2d 178 (Iowa 1988); *Badische Corp. v. Caylor*, 356 S.E.2d 198 (Ga. 1987); *Spherex, Inc. v. Alexander Grant & Co.*, 451 A.2d 1308 (N.H. 1982); *Haddon View Investment Co. v. Coopers & Lybrand*,

---

[1]This Court has recognized the tort of negligent misrepresentation as defined in the Restatement § 552. *Kitchen Krafters, Inc. v. Eastside Bank of Montana*, ___ P.2d ___, ___, 47 St. Rep. 602, 609 (Mont. 1990); *Bottrell v. American Bank*, 773 P.2d 694, 705-06, 46 St.Rep. 561, 574-75 (Mont. 1989); *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 197 Mont. 1, 12, 640 P.2d 453, 458-59 (1982). In *State Bank of Townsend v. Maryann's, Inc.*, 204 Mont. 21, 32-33, 664 P.2d 295, 301-02 (1983), we approved of Restatement § 552 comment a, which briefly speaks of the duty of a supplier of information to users of that information. Our approval of that comment was purely dicta and has no binding effect on the case at hand.

436 N.E.2d 212 (Ohio 1982); Bonhiver v. Graff, 248 N.W.2d 291 (Minn. 1976).

The Restatement expands the "known third party" rule of Credit Alliance. It provides in pertinent part:

> (1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2)  Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a)  by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b)  through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. (Emphasis added.)

Restatement (Second) of Torts § 552 (1977).

Unlike the Credit Alliance approach, the Restatement does not require the accountant to actually know the identity of the specific third party and the particular transaction before liability will lie. The Restatement requires only that the accountant foresee and intend that members of a limited class will rely on his representations in determining whether to enter into

a transaction with the audited entity. The transaction the parties enter into must be of a type actually foreseen by the accountant.

At least four jurisdictions have expanded an accountant's duty to third parties beyond the "actually foreseen" class of the Restatement. These jurisdictions apply ordinary negligence rules when dealing with the question of the scope of liability, holding that an accountant owes a duty to all who might reasonably and foreseeably obtain and rely upon the accountant's work product. Touche Ross & Co. v. Commercial Union Ins. Co., 514 So.2d 315 (Miss. 1987); International Mortgage Co. v. John P. Butler Accountancy Corp., 223 Cal.Rptr. 218 (Cal. Ct. App. 1986); Rosenblum v. Adler, 461 A.2d 138 (N.J. 1983); Citizens State Bank v. Timm, Schmidt & Co., S.C., 335 N.W.2d 361 (Wis. 1983).

Because the facts of the present case meet the strictest of the three formulations of an accountant's duty of care to non-clients, we see no need to adopt a more liberal standard at this time. We therefore adopt a modified version of the Credit Alliance rule.

In Credit Alliance, the defendant accounting firm knew that the plaintiff was the audited entity's principal lender and was fully aware that the plaintiff was relying on the financial statements and inventory valuations certified by the accounting firm to determine the amounts of money the plaintiff was willing to lend the audited entity. Furthermore, representatives of the plaintiffs and the accounting firm were in direct oral and written communication during the entire course of the lending relationship

between the plaintiff and the audited entity. The Court determined that these facts added up to a near privity relationship, constituting a sufficient basis for the plaintiff's cause of action against the accounting firm.

In the present case, as in Credit Alliance, the accountant actually knew that a specific third party would obtain and rely upon the audit in question. On May 17, 1977, the accountant, Allen Bloomgren, met with Eugene Thayer, major stockholder and president of Montana Merchandising and 50-percent shareholder and vice-president of Intermountain; Robert Hicks, the other 50-percent shareholder and president of Intermountain; Gary Black, secretary-treasurer and controller of Montana Merchandising and secretary-treasurer of Intermountain; and L. D. Nybo, attorney for Thayer, Montana Merchandising and Intermountain. The meeting took place at the office of Montana Merchandising. With the exception of Bloomgren, all parties testified that Montana Merchandising was discussed at the meeting. Bloomgren's own work papers, which noted that Intermountain's fiscal year was to be aligned with Montana Merchandising's, corroborated the testimony of the other individuals. Substantial credible evidence indicates that Bloomgren knew that Montana Merchandising would rely upon the audit.

In addition, Bloomgren knew that the audit was to be used for a particular purpose. Bloomgren testified that he knew that the end and aim of the audit was to aid in the buy out of Intermountain and that the reason for the buy out was that Intermountain needed

more capital. From this testimony, the jury could reasonably have concluded that Bloomgren knew that the audit would be used in connection with all facets of the buy out, including direct loans to Intermountain and loan guarantees on behalf of Intermountain.

Finally, Bloomgren's conduct links him to Montana Merchandising. In Credit Alliance, the defendant accounting firm communicated orally and in writing with the plaintiff for the purpose of discussing the audited entity's financial condition. The Court held that these communications provided a sufficient nexus between the accountant and the noncontractual third party. Credit Alliance, 483 N.E.2d at 120.

In this case, Bloomgren met with Montana Merchandising's principle shareholder, controller and attorney prior to the audit to discuss the financial condition of Intermountain. The meeting took place in Montana Merchandising's office. The accountant referred to Montana Merchandising in his notes. The other four parties present at the meeting testified that Montana Merchandising was discussed. In addition, during the audit, Bloomgren again met at Montana Merchandising's office with the corporation's principle shareholder and controller to discuss the preliminary audit figures. Substantial evidence links Bloomgren to Montana Merchandising.

While the facts of the case fit succinctly under the Credit Alliance formulation, a question arises regarding whether the jury instruction given on an accountant's duty of care also falls under

the Credit Alliance rule. The instruction at issue provided as follows:

> It is not necessary for Montana Merchandising to be a party to the contract of auditing services in order for it to recover against Mr. Bloomgren or his partnership. If you find Mr. Bloomgren had reason to know that Montana Merchandising would rely upon the audit or Mr. Bloomgren could reasonably foresee damage to Montana Merchandising if the audit was performed negligently, then Mr. Bloomgren and the partnership of Seman, Koontz, Jacobsen & Bloomgren are liable for any damages caused by their negligence in the performance of the audit.

The instruction is less than perfect. However, its defects are not so severe as to cause reversible error.

The instruction is not really any broader than the actually known third party rule. It requires the jury to determine whether the accountant knew that his work product would be relied upon by or that his negligence could cause damage to a specific party-- Montana Merchandising--not a class of parties or any party that might foreseeably rely upon the audit. By restricting the language to Montana Merchandising, the instruction negated the potentially harmful effect of the phrase "reasonably foresee."

Similarly, the instruction's failure to require the jury to make findings regarding the type of transactions Montana Merchandising would enter into in reliance upon the audit is not grounds for reversal. Other instructions provided that damages may include loans and guarantees. Furthermore, Bloomgren admitted that he knew the audit was undertaken specifically for the buy out and that the buy out was undertaken because Intermountain needed an infusion of capital. Viewing this instruction in light of the

12

evidence presented at trial and the other instructions given to the jury, Bushnell v. Cook, 221 Mont. 296, 302, 718 P.2d 665, 669 (1986), we cannot say that the failure to list the particular transaction upon which the audit would be relied constitutes a fatal defect in the jury instruction.

Nor does the instruction's failure to require a specific finding of conduct linking the accountant to Montana Merchandising render it fatal. While such conduct may be useful evidence for proving that the accountant actually knew of the reliance of a particular third party and the specific transaction for which the audit was to be used, we will not require the jury to be instructed that they must find such conduct before imposing liability.

In sum, an accountant may owe a duty of care to third parties with whom he is not in privity of contract. However, this duty exists only if the accountant actually knows that a specific third party intends to rely upon his work product and only if the reliance is in connection with a particular transaction or transactions of which the accountant is aware when he prepares the work product.

## II.

Did the District Court err in instructing the jury that an accountant's failure to comply with generally accepted auditing standards (GAAS) or generally accepted accounting principles (GAAP) constitutes negligence as a matter of law?

The District Court instructed the jury as follows:

> If you find that Mr. Bloomgren failed to
> comply with generally accepted auditing

13

> standards (GAAS) or generally accepted accounting principles (GAAP) in his audit of Intermountain Merchandising, Inc., the plaintiff has proved negligence on the part of Seman, Koontz, Jacobsen & Bloomgren <u>as a matter of law</u>. You should then determine whether that negligence was a legal cause of the Plaintiff's injury.

Bloomgren first argues that the jury should not have been instructed on GAAS and GAAP because the Board of Public Accountants (Board), which was created by the Montana Legislature in 1969 and empowered and obligated to set the standards for accountants practicing in this state, did not adopt GAAS and GAAP until 1980, three years after Bloomgren completed the audit. Bloomgren maintains that the District Court's instruction on GAAS and GAAP resulted in a retroactive application of the rules of the Board.

Under the particular facts of this case, whether the Board had yet adopted GAAS and GAAP at the time of the audit is irrelevant. The expert witnesses called on behalf of Montana Merchandising as well as the expert called by Bloomgren testified that GAAS and GAAP were national standards promulgated by the American Institute of Certified Public Accountants that were followed by members of the profession. More importantly, Bloomgren certified in the engagement letter that the audit would be "conducted in accordance with generally accepted auditing standards . . . ." Again, in the letter accompanying the audited financial statements, he certified that the audit was completed "in accordance with generally accepted auditing standards . . . ." He also warranted that Intermountain's balance sheet fairly represented the financial condition of the

14

company "in conformity with generally accepted accounting principles . . . ."

The District Court did not retroactively apply rules of the Board when it instructed on GAAS and GAAP. Once Bloomgren certified that his work was completed in accordance with GAAS and GAAP he was required to follow those standards. We will not allow an accountant who represents that his work conforms to national standards to escape the consequences of that representation simply because an administrative body in Montana has not yet adopted those same standards.

Bloomgren next argues that, even if GAAS and GAAP were applicable in this case, the trial court erred by instructing the jury that an accountant's failure to comply with those standards constituted negligence as a matter of law. Bloomgren maintains that the court should have instead instructed the jury that any failure to adhere to GAAS and GAAP was merely evidence of negligence. We agree.

A violation of a statute may constitute negligence as a matter of law, or, as it is often called, negligence per se. This Court has hesitated to extend the doctrine of negligence per se beyond the statutory framework. Thus, we have held that violations of administrative regulations that are not specifically incorporated by statute do not constitute negligence per se. Cash v. Otis Elevator Co., 210 Mont. 319, 326-27, 684 P.2d 1041, 1045, (1984)(violation of Montana safety code for elevators is evidence of negligence rather than negligence per se). See also Stepanek

v. Kober Constr., 191 Mont. 430, 438, 625 P.2d 51, 56, (1981)(violation of OSHA regulations is evidence of negligence). We have also held that violations of rules contained in a maintenance manual for the Montana Department of Highways constitute only evidence of negligence. Townsend v. State, 227 Mont. 206, 209, 738 P.2d 1274, 1276 (1987). Most precisely on point, we have held that violations of the standards of practice for architects as described in a handbook published by the American Institute of Architects constitute only evidence of negligence, not negligence as a matter of law. Taylor, Thon, Thompson & Peterson v. Cannaday, 230 Mont. 151, 155, 749 P.2d 63, 65-66 (1988).

Accountants and auditors have a duty to exercise the same degree of care, skill and competence as that exercised by other reasonably competent members of the profession in the same or similar circumstances. Greenstein, Logan & Co. v. Burgess Marketing, Inc., 744 S.W.2d 170, 185 (Tex. Ct. App. 1987); In re Hawaii Corp., 567 F.Supp. 609, 617, (D. Haw. 1983). While it may be a matter of law for the trial court to determine the standard of care applicable to the case and to so instruct the jury, Aasheim v. Humberger, 215 Mont. 127, 129, 695 P.2d 824, 826 (1985), the jury must retain the ability to determine whether the professional exercised the proper degree of care, skill and diligence warranted under the circumstances. Evidence of national rules and codes followed by members of the profession may aid the jury in determining whether the proper degree of care was exercised,

however, any deviation from the national guidelines, no matter how slight, does not automatically constitute negligence.

Even though the District Court erred in instructing the jury that the failure to comply with GAAS and GAAP was negligence as a matter of law, the error was harmless.

The testimony of both Montana Merchandising's and Bloomgren's experts established that Bloomgren failed to exercise due care in several ways. He failed to identify almost $14,000 in unrecorded liabilities. He erroneously labelled $12,000 of prepaid commissions as accounts receivable. He misclassified $291,000 of short-term debt as long-term debt. He improperly recorded income tax liability, showing no taxes due. He failed to consolidate Intermountain's financial statements with those of its subsidiaries. Then, having failed to consolidate, he improperly used the equity method rather than the cost method of accounting, resulting in a $40,000 overstatement of Intermountain's income.

In addition, Montana Merchandising's experts testified that Bloomgren failed to maintain the degree of independence and skepticism required of an auditor. He failed to gather sufficient competent evidence to properly test the pricing of the inventory and to determine whether the inventory was obsolete or slow moving. He failed to adapt the accounting program to the type of corporation he was auditing.

An erroneous instruction is not prejudicial where it appears that, even without the instruction, the same verdict would have been reached. Britton v. Farmers Ins. Group, 221 Mont. 67, 88,

721 P.2d 303, 316 (1986); Wolfe v. Schulz Refrigeration, 188 Mont. 511, 519, 614 P.2d 1015, 1019 (1979). In view of the overwhelming evidence of Bloomgren's failure to exercise due care, the jury would have reached the same verdict without the instruction in question. The instruction was, at most, harmless.

## III.

Did the District Court err in instructing the jury that, in a negligent misrepresentation action, reliance on representations is presumed?

The District Court instructed the jury on the reliance element of negligent misrepresentation as follows:

> Where representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that representations were relied upon.

Bloomgren argues that this instruction impermissibly shifts the burden of proving reliance from the plaintiff to the defendant. We do not agree.

The instruction imposed the initial burden on Montana Merchandising to prove that representations were made, that they were material and that it had taken action upon them. Once Montana Merchandising introduced evidence of reliance, the burden shifted to Bloomgren to prove that Montana Merchandising did not act upon its representations. Only if Bloomgren failed to rebut Montana Merchandising's evidence could the instruction's presumption of reliance come into play. Thus, the instruction did not improperly shift the burden of proof.

Bloomgren also contends that it was prejudiced by the trial court's refusal to let it delve into certain aspects of Montana Merchandising's reliance. A review of the record, however, shows that the court gave Bloomgren wide latitude to question witnesses on the question of reliance. Only when Bloomgren inquired into the existence of corporate resolutions and minutes did the court limit its examination.

The District Court retains broad discretion to determine the admissibility of evidence. Massman v. City of Helena, 773 P.2d 1206, 1210, 46 St.Rep. 764, 768 (Mont. 1989). As the District Court limited Bloomgren's inquiry into the question of reliance only in the area of corporate resolutions and minutes, we cannot say that the court abused its discretion.

IV.

Did the District Court err in submitting the issue of causation to the jury?

At the close of Montana Merchandising's case in chief, Bloomgren moved the trial court for a directed verdict on the ground that Montana Merchandising had failed to prove that Bloomgren had caused its damages. Bloomgren contends that the court erred in denying its motion.

When examining a denial of a motion for directed verdict, this Court utilizes the same standard of review as that used to review the propriety of a jury verdict. We will sustain the trial court's refusal to enter a directed verdict if substantial evidence exists to support the jury verdict. In determining whether substantial

evidence supports the verdict, we will review the evidence in the light most favorable to the prevailing party. We will not reweigh conflicting evidence, for the weight and credibility to be given each piece of proof lies within the province of the jury. Stewart v. Fisher, 767 P.2d 1321, 1323, 46 St.Rep. 116, 119 (Mont. 1989).

Bloomgren first argues that Montana Merchandising failed to prove that Intermountain was insolvent at the time of the audit. According to Bloomgren, Intermountain's insolvency arose after the audit was completed, therefore, the errors committed in the Bloomgren audit were not a cause in fact of Montana Merchandising's damages.

Bloomgren maintains that Montana Merchandising failed to prove Intermountain's insolvency because Gary Hill, the accountant who performed the audit subsequent to Bloomgren's and who discovered Bloomgren's auditing errors, only estimated the amount by which the Bloomgren audit had overstated the value of Intermountain's inventory. Bloomgren contends that this estimate was only a guess, therefore it was not substantial evidence upon which the jury could reasonably have determined that Intermountain was insolvent at the time of the audit.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. An expert's opinion, even if based on an estimate, is relevant evidence if it has a tendency to make a fact in issue more probable. Vandalia Ranch,

Inc. v. Farmer's Union Oil & Supply Co. of Hinsdale, 221 Mont. 253, 258, 718 P.2d 647, 650 (1986). The imprecision of an expert opinion goes to the weight, not the sufficiency of the evidence. State v. Smith, 220 Mont. 364, 377, 715 P.2d 1301, 1308 (1986).

In the present case, Hill testified that Bloomgren had erroneously priced the Intermountain inventory and had failed to consider the amount of obsolete inventory on hand, resulting in an estimated $153,000 overstatement of the inventory's value. Hill arrived at this figure through a statistical sampling of the inventory. He thoroughly explained, on both direct and cross-examination, the method used to conduct the sampling.

Montana Merchandising's two other expert witnesses supported Hill's testimony regarding the overvaluation of Intermountain's inventory. Two warehousemen at Intermountain also supported the evidence by testifying that 30 to 40 percent of the inventory was obsolete.

Furthermore, the overstatement of inventory was only one error found on the Bloomgren audit. Testimony given by Hill, which was supported by expert witnesses for both sides, revealed that Bloomgren had committed other errors when auditing Intermountain. He neglected to identify almost $14,000 in unrecorded liabilities, he improperly credited Intermountain with $12,000 in prepaid commissions and he failed to offset a $40,000 loss to subsidiaries.

Montana Merchandising was not required to prove the exact amount of Bloomgren's errors. It was only required to introduce substantial evidence tending to show that it was more probable than

not that Intermountain was insolvent at the time of the audit. Indeed, part of the evidence relied upon by Montana Merchandising consisted of an estimated overstatement of inventory. However, it was within the province of the jury to determine the weight and credibility of this evidence. Viewed in the light most favorable to the prevailing party, substantial evidence supported a finding that Intermountain was insolvent at the time of the audit.

Bloomgren next contends that Montana Merchandising failed to prove that Bloomgren's negligence proximately caused Montana Merchandising's damages. Bloomgren argues that other factors may have contributed to the damages, such as the loss of two key employees after the audit was completed, unbridled competition from another business, the lack of a market and the leveraged condition of Intermountain.

Bloomgren relies on our opinion in Young v. Flathead County, 232 Mont. 274, 757 P.2d 772 (1988), for the proposition that Montana Merchandising was required to prove that the negligently performed audit was the sole cause of its damages. In Young, we stated:

> Where more than one possible cause of damage appears, the plaintiff must eliminate causes other than those for which the defendant is responsible.

Young, 232 Mont. at 283, 757 P.2d at 777. This statement is a departure from Young's otherwise excellent analysis of tort causation. Contrary to the above statement, a plaintiff is not required to eliminate all possible causes of damage in order to prove causation. Indeed, if such were the case, a defendant would

rarely be held liable in a negligence action, for, as one authority has noted, "The event without millions of causes is simply inconceivable; and the mere fact of causation, as distinguished from the nature and degree of the causal connection can provide no clue of any kind to singling out those which are held to be legally responsible." Prosser and Keeton on Torts § 41 at 266 (5th ed. 1984).

Proximate cause is and should be discussed in terms of foreseeability. A defendant is liable for his wrongful conduct if it is reasonably foreseeable that plaintiff's injury may be the natural and probable consequence of that conduct. Kitchen Krafters, Inc. v. Eastside Bank of Montana, ___ P.2d. ___, ___, 47 St.Rep. 602, 611 (1990).

In Young, 232 Mont. at 282, 757 P.2d at 777, we stated, "[P]roximate cause is one which in a natural and continuous sequence, unbroken by any new, independent cause, produces injury . . . ." This does not mean that any intervening event will cut off a defendant's liability. Only if the intervening cause is reasonably unforeseeable will it be considered a supervening event that breaks the chain of causation. Kitchen Krafters, ___ P.2d at ___, 47 St.Rep. at 612-13. A defendant's liability for his wrongful act will not be severed by an intervening cause if the intervening cause is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances. Nehring v. LaCounte, 219 Mont. 462, 470, 712 P.2d 1329, 1334 (1986). Accord Heckaman v. Northern

23

Pac. Ry. Co., 93 Mont. 363, 386, 20 P.2d 258, 265 (1933); Reino v. Montana Mineral Land Development Co., 38 Mont. 291, 295-96, 99 P. 853, 854-55 (1909). The question of foreseeability is an issue of fact to be decided by the jury. Prosser and Keeton on Torts, § 45, at 321. Whether the factors cited by Bloomgren were so unforeseeable as to break the chain of causation was properly left for the jury to determine. Substantial credible evidence supports the jury verdict in favor of Montana Merchandising. Montana Merchandising invested in Intermountain believing the corporation was profitable when in fact it was insolvent. The subsequent events cited by Bloomgren as reasons for the corporation's demise--the loss of employees, the competition from another business, the lack of a market and the leveraged condition of Intermountain--were of little consequence. They certainly cannot be considered unforeseeable, supervening events that broke the chain of causation.

V.

Did the District Court err in failing to reduce the jury verdict?

Following the Bloomgren audit, Thayer gave Hicks a note in the amount of $52,445 and Hicks transferred his stock in Intermountain to Thayer. Later, Thayer transferred the stock to Montana Merchandising and Montana Merchandising assumed the debt to Hicks.

When Hicks was named as a co-defendant in this lawsuit, he counterclaimed for the $52,445, the amount still due and owing on the note. Hicks, Thayer and Montana Merchandising reached a

settlement prior to trial. As part of the settlement, the note was cancelled.

Bloomgren contends that the judgment should be reduced by $52,445, the amount forgiven by the cancellation of the note. It argues that if the judgment is not reduced, Montana Merchandising will have recovered more than once on a single claim, resulting in an impermissible double recovery.

This Court will not disturb a jury verdict as long as the verdict, when viewed in the light most favorable to the prevailing party, is supported by substantial credible evidence. Weinberg v. Farmers State Bank of Worden, 231 Mont. 10, 14-15, 752 P.2d 719, 721-22 (1988). In the present case, Montana Merchandising itemized every item of damage it sought from Bloomgren and presented those damages to the jury. Nowhere on that itemized list is a reference to the cancelled note. Nor can we find any point in the transcript where Montana Merchandising referred to the $52,445 cancelled note as an element of damages.

Montana Merchandising's itemized damages totalled approximately $494,000. They included funds directly loaned to Intermountain, monies paid on bank loans guaranteed on behalf of Intermountain, sums expended to liquidate Intermountain and expenses incurred by Intermountain and paid by Montana Merchandising. The jury returned a verdict of $339,308. The verdict is supported by substantial credible evidence and will not be reduced by this Court.

VI.

25

Did the District Court err in granting prejudgment interest to Montana Merchandising?

The District Court awarded Montana Merchandising prejudgment interest at the rate of 10 percent accruing from 30 days after March 6, 1986, the date Montana Merchandising presented a written statement of claim to Bloomgren. Bloomgren argues that this award was in error. We agree.

Two statutes govern prejudgment interest awards. Section 27-1-211, MCA, provides for an award of prejudgment interest if 1) a party's damages are capable of being made certain by calculation; and 2) the right to recover damages vests on a particular day. Crystal Springs Trout Co. v. First State Bank of Froid, 225 Mont. 139, 140, 736 P.2d 95, 96 (1987). Montana Merchandising concedes that this section is not an appropriate statute for an award of prejudgment interest on the present case because its right to recover from Bloomgren did not vest on a particular day.

The other statute governing prejudgment interest is § 27-1-210, MCA, which allows an award of interest in certain tort actions. Because the legislature enacted § 27-1-210, MCA, in 1985, approximately eight years after Montana Merchandising's claims against Bloomgren arose, an award of prejudgment interest under this statute in the present case would impermissibly give the statute retroactive effect.

A statute is retroactive if it "takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability in respect to

26

transactions already past." City of Harlem v. State Highway Commission, 149 Mont. 281, 284, 425 P.2d 718, 720 (1967). Section 27-1-210, MCA, creates a new obligation, the payment of prejudgment interest on certain tort claims when, prior to 1985, no such obligation existed. Therefore, an award of prejudgment interest for claims that arose prior to 1985 results in a retroactive application of the statute.

Unless expressly so declared by the legislature, a statute may not be applied retroactively. Section 1-2-109, MCA. We find no such declaration in either § 27-1-210, MCA, or in Chapter 523, § 1, 1985 Mont. Laws 1050. Consequently, the statute does not apply to any claim arising prior to the date of enactment, including the claim in the present case.

VII.

Did the District Court err in its award of costs to Montana Merchandising?

Following entry of judgment, Montana Merchandising submitted a bill of costs in the amount of $6,561. The bill was accompanied by an affidavit of Montana Merchandising's attorney certifying that, to the best of his knowledge, the costs were correct and necessary disbursements allowable by law. Bloomgren objected and moved the court to tax costs. After a hearing, the District Court entered an order denying the motion to reduce costs.

Not all litigation expenses that may properly be billed to a client may necessarily be recovered from the opposing party. Only those costs delineated in § 25-10-201, MCA, may be charged to the

opposing party unless the item of expense is taken out of § 25-10-201, MCA, by a more specialized statute, by stipulation of the parties or by rule of court. Luppold v. Lewis, 172 Mont. 280, 292, 563 P.2d 538, 545 (1977).

In the present case, neither party argues that the disputed costs are governed by either a special statute, stipulation of the parties or rule of court. Therefore, § 25-10-201, MCA, governs the issue. It reads as follows:

> A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows:
>
> (1)   the legal fees paid of witnesses, including mileage, or referees and other officers;
>
> (2)   the expenses of taking depositions;
>
> (3)   the legal fees paid for publication when publication is directed;
>
> (4)   the legal fees for filing and recording papers and certified copies thereof necessarily used in the action or on the trial;
>
> (5)   the legal fees paid stenographers for per diem or for copies;
>
> (6)   the reasonable expenses of printing papers for a hearing when required by a rule of court;
>
> (7)   the reasonable expenses of making transcript for the supreme court;
>
> (8)   the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; and
>
> (9)   such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law.

Section 25-10-201, MCA.

"A verified memorandum of costs and disbursements is prima facie evidence that the items were necessarily expended and are properly taxable, unless, as a matter of law, they appear otherwise on the face." Swenson v. Buffalo Bldg. Co., 635 P.2d 978, 985, 38 St.Rep. 1588, 1596 (Mont. 1981). Conversely, a verified memorandum is not prima facie evidence of costs that, on their face, do not fall within the itemized list of § 25-10-201, MCA. The prevailing party has the burden of proving that each disbursement that does not fall within the statutory list is within the purview of the statute.

Montana Merchandising initially concedes that, in accordance with Powers Mfg. Corp. v. Leon Jacobs Enters., 216 Mont. 407, 701 P.2d 1377 (1985) and Chilcott v. Rea, 52 Mont. 134, 155 P. 1114 (1916), airfares and hotel bills incurred by its expert witnesses are not allowable costs. Along this line we additionally note that a $54 charge for rental of a car for one of Montana Merchandising's experts is also an inappropriate cost. Section 24-10-201(1), MCA, allows only mileage fees to be taxed as costs. See also § 26-2-501(1)(b), MCA. It does not allow car rental expenses.

Bloomgren contests the propriety of expenses incurred by Montana Merchandising in obtaining depositions of R. Hicks, E. Thayer, R. Butcher and R. Henry. While § 25-10-201(2), MCA, allows costs incurred in taking depositions, this subsection has been modified by case law. Only the costs of depositions used at trial are recoverable. Cash v. Otis Elevator Co., 210 Mont. 319, 333, 684 P.2d 1041, 1048. We must remand this question to the District

Court for it to determine whether the depositions of Hicks, Thayer, Butcher and Henry were used at trial. Only the expenses incurred by Montana Merchandising in recording, transcribing and editing any deposition used at trial shall be charged to Bloomgren. The incidental expenses incurred in obtaining a deposition, including airfare, rental car costs and hotel charges, shall not be charged to Bloomgren.

At trial, Montana Merchandising presented the testimony of one of its witnesses, Tom Jenkins, by means of a video-taped deposition. While the jury viewed the tape, the court and the parties followed along with written transcripts of the video-taped deposition. On several occasions, the written transcripts were used by both parties, Bloomgren as well as Montana Merchandising, to object to upcoming portions of the video tape that were inadmissible under the Rules of Evidence. To determine how to rule, the court reviewed the portion of the written transcript to which the objection referred. If the court sustained the objection, it used the transcript to determine how much of the video-taped testimony should be kept from the jury.

In its bill of costs, Montana Merchandising sought to charge the expense of both videotaping and transcribing Jenkins' deposition. Bloomgren claims that both charges are improper. We do not agree.

As we noted earlier, the costs of a deposition used at trial are properly taxable. Cash, 210 Mont. at 333, 684 P.2d at 1048. Furthermore, Rule 30(h)(5), M.R.Civ.P., provides, "The reasonable

expense of recording, editing, and using an audio-visual or tape recorded deposition may be taxed as costs as provided by law." This rule, however, remains subject to the limitation that the audio visual or tape recording must be used at trial before the expenses incurred in obtaining such a deposition may be charged to the opposing party. In this case, both the video tape and the written transcript of Jenkins' deposition were used at trial, therefore, the expenses of both may be charged to Bloomgren.

Bloomgren also disputes costs claimed by Montana Merchandising for charges incurred for an expert's review of work papers and a consultation with another law firm regarding jury instructions. We agree that such charges are not taxable costs within the meaning of the statute but are more in the nature of expert and attorney fees, the costs of which must be born by the party who incurred them.

Finally, Bloomgren challenges several miscellaneous costs charged by Montana Merchandising, including expenses for telephone calls, photocopies, supplies for exhibits and enlargements of exhibits. We have previously given the District Court broad discretion under § 25-10-201(9), MCA, to determine whether similar costs are "reasonable and necessary expenses as are taxable according to the course and practice of the court . . . " See Cash, 210 Mont. at 333, 1041 P.2d at 1048 (allowing the taxing of costs for photographs used at trial); Swenson, 635 P.2d at 985, 38 St.Rep. at 1596, (allowing the taxing of costs for telephone calls, photographs, exhibits, supplies, photocopies and other

31

miscellaneous charges). However, we believe that the discretion of the District Court should be limited to allowing only those costs incurred in constructing exhibits admitted at trial. On remand, the District Court shall determine whether the remaining expenses claimed by Montana Merchandising were incurred in such manner. Any expenses for photocopies, supplies and enlargements that were expended on exhibits admitted at trial may be charged to Bloomgren. Telephone charges, however, may not be taxed as costs under any circumstances.

To summarize the foregoing discussion, the following expenses are not taxable costs: telephone calls; airfares, hotel bills and rental car expenses incurred by Montana Merchandising's expert witnesses; airfares, hotel bills, rental car expenses and other incidental costs incurred in obtaining depositions; charges for an expert's review of workpapers; and expenses of consultation with another law firm. Both the video tape and the written transcript of Jenkins' deposition are taxable. On remand, the District Court shall determine whether the depositions of Hicks, Thayer, Butcher and Henry were used at trial. If so, the expenses incurred in recording, transcribing and editing these depositions are taxable costs. The District Court on remand shall also determine whether photocopies, supplies and enlargements were used in exhibits admitted at trial. If so, these costs are taxable and may be charged to Bloomgren.

The judgment entered by the District Court on February 19, 1988 awarding Montana Merchandising $339,307.61 is affirmed.

The District Court's award of prejudgment interest is reversed. Montana Merchandising is entitled to interest at the rate of 10 percent per annum on the judgment of $339,307.61 from date of entry of judgment on February 19, 1988.

The issue of costs is remanded for further proceedings in accordance with this Opinion. Interest on costs will commence on the date of entry of the District Court order on costs after the hearing on remand.

_____
                                                    Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices