No. 91-042

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

VALLEY PROPERTIES LIMITED
PARTNERSHIP, a Montana Limited
Partnership; and VALLEY MOTOR
SUPPLY COMPANY OF MILES CITY,
a Montana corporation,

Plaintiffs and Appellants.

-vs-

STEADMAN'S HARDWARE, INC.,

Defendant and Respondent.

FILED

JAN - 7 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Kenneth R. Wilson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Richard M. Kovak, Cozen and O'Conner,
Seattle, Washington; James L. Jones,
Dorsey & Whitney, Billings, Montana.

For Respondent:

T. Thomas Singer, Moulton, Bellingham,
Longo & Mather, Billings, Montana.

Submitted on briefs: November 14, 1991

Decided: January 7, 1992

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellants were the owners of a warehouse and commercial property in Miles City. A fire started in the portion of the building rented to respondent, and destroyed the building. Appellants filed a complaint in the Sixteenth Judicial District Court, Custer County, for damages resulting from the fire. Respondent counterclaimed for its damages. Following a jury trial, the District Court entered a directed verdict in appellants' favor on the counterclaim. The jury returned a verdict in respondent's favor on appellants' complaint. Appellants appeal from the District Court's judgment. We affirm.

Appellants raise the following issues:

1. Did the District Court err by refusing to instruct the jury on appellants' theory of *res ipsa loquitur*?

2. Did the District Court err by refusing to give an instruction based upon *Thayer v. Hicks* (1990), 243 Mont. 138, 793 P.2d 784?

3. Did the District Court err by allowing an expert witness to testify as a rebuttal witness, where the witness had not been disclosed before trial?

In 1988, appellant Valley Properties Limited Partnership (Valley Properties) was the owner of a commercial property at 809 Bridge Street in Miles City. It had purchased the property in December 1986. Appellant Valley Motor Supply Company of Miles City (Valley Motor Supply) occupied part of this building and used it

2

for a parts and accessory tool warehouse. Valley Properties and Valley Motor Supply are related in that Valley Properties owns all of the real estate in the Northwest Division of Valley Motor Supply Company, the parent corporation which controls Valley Motor Supply. Appellants will be referred to collectively as "Valley."

Respondent Steadman's Hardware, Inc., d/b/a Coast to Coast Stores, rented a portion of the Bridge Street property and used it as a warehouse. Steadman's Hardware had been occupying part of the warehouse since 1980 or 1981. Steadman's Hardware had exclusive control over its section of the warehouse. All of the doors except one were barred or permanently sealed. Steadman's Hardware put a lock on the one operable overhead door, and only its employees had keys to the lock.

Steadman's Hardware paid a monthly rent for the warehouse, and Valley Properties provided electricity and took care of major repairs to the building. The warehouse had been remodeled in 1980 to provide more space and upgrade the portion of the building occupied by Valley Motor Supply. The electrical service was replaced on that side of the building at that time. However, the wiring for the portion of the building rented to Steadman's Hardware was not remodeled nor upgraded. At least some of the wiring was quite old, probably dating from the 1930s. The wiring was an old-fashioned type, with twisted wire covered by cloth insulation.

3

On March 10, 1988, the warehouse was quite full. Steadman's Hardware had stored water heaters, mowers, bicycles, PVC pipe, garbage cans, barbecues, snow blowers, different appliances, fertilizer, and various other items in the warehouse. Shortly after 2 p.m., two employees, Robert Torgrimson and Lynn Harbaugh, went to the warehouse to retrieve an exercise bicycle. Torgrimson, who was off duty at the time, wanted to buy the bike. They went through the 10' x 10' overhead door and proceeded to the bicycle storage area.

The bicycles were stored in cardboard boxes, stacked three high along an aisle. In order to read the labels on the bicycle boxes, Harbaugh turned on the lights in the bicycle aisle. The lights in this aisle consisted of a heavy cord with a socket at the end containing a bare bulb, and a pull chain with a string hanging down to operate the light. Rather than being above the aisle, the lights were directly above the stacked bicycle boxes. The pull string from the lights was draped over the bicycles.

Because the aisle was rather narrow, Torgrimson waited at the end of the aisle. Harbaugh found the exercise bicycle at the bottom of the stack, underneath one of the lights. He had to remove other bicycles to get at the exercise bike. He took one box, or possibly two, and put it on top of the adjacent stack. In doing so, the box bumped the light and pushed it over about a foot. The pull cord caught on the box and turned off the light. Harbaugh untangled the cord and pulled the light back on. Harbaugh dragged

4

the exercise bicycle out of the aisle to Torgrimson and the two men carried the box out of the warehouse to Torgrimson's car.

It is not clear whether Harbaugh replaced the cardboard box or boxes he had placed on top of the other bicycle boxes. He may have left a box on top of the three-high stack, and this box could have been in contact with the light bulb. It is also not clear whether Harbaugh turned off these lights before leaving the warehouse. Torgrimson testified at trial that he did not see Harbaugh restack the boxes and he could not tell if any of the boxes were touching the light bulb. Torgrimson told a fire investigator the boxes were not replaced in the stack. Torgrimson could not remember if the lights were left on in the bicycle aisle after they removed the exercise bicycle. Harbaugh testified he replaced the other boxes before leaving the aisle. He also testified that he thought he turned off one of the lights and was not sure about the other one. However, at an earlier deposition, and in a statement to fire investigators, he stated that he left the lights on because his hands were full carrying out the exercise bicycle. Harbaugh did not go back into the warehouse to check that the lights were turned off.

About 2:30 p.m., Martin O'Dea, another employee, went to the warehouse to get a refrigerator. He opened the overhead door and went inside. He noticed a smell that reminded him of burning leaves. He was putting the refrigerator on a cart when he noticed the lights flicker at the end of the aisle. Then he noticed smoke

5

up near the ceiling. He left the refrigerator and went toward the main aisle. As he passed the bicycle aisle, he saw flames in that aisle at between four and eight feet off the floor. He considered trying to put out the fire, but decided it was already too big. He crossed the alley to the hardware store and told them to call the fire department. The call came into the fire department at 3 p.m.

Fire fighters arrived within minutes, but flames were already shooting out of the overhead door. The firemen had difficulty fighting the fire because the other doors were all barred and the warehouse was full of merchandise. It took nearly two hours to bring the fire under control. The fire fighters were unable to save any significant portion of the building.

In July 1989, Valley Properties and Valley Motor Supply filed a complaint for damages in the District Court against Steadman's Hardware.[1] The plaintiffs alleged that the employees of Steadman's Hardware had negligently stacked cardboard boxes too close to an electric light and caused the fire in the warehouse. Alternatively, the plaintiffs alleged that the fire originated in the portion of the warehouse over which Steadman's Hardware had exclusive control, and that Steadman's Hardware should be held liable for the damages under the doctrine of *res ipsa loquitur*.

---

[1]Regan Plumbing & Heating, Inc., and the County of Custer were also plaintiffs in the lawsuit, and Charles Steadman was named as a defendant. These parties have settled and/or been dismissed by the District Court and are not parties in this appeal.

6

Steadman's Hardware answered the complaint, denying any negligence and denying that it or its employees caused the fire. Steadman's Hardware counterclaimed for the losses it suffered in the fire, alleging that the fire originated in the electrical system. Steadman's Hardware contended that the owner of the building was responsible for the electrical system, that the electrical system was inadequate and deteriorated, and that the owner should have known of the condition of the electrical system.

A jury trial was held from July 10-18, 1990. Several employees of the various parties testified, as well as several fire investigators and other experts. The experts agreed it was difficult to ascertain the cause of the fire and there was very little direct physical evidence to aid them in determining the cause. They generally eliminated arson, spontaneous combustion, cigarette smoking, and use of heaters or other appliances as likely causes. This left Valley's theory (a cardboard box was left in contact with a lighted bulb), and Steadman's Hardware's theory (the electrical system malfunctioned or shorted) as the probable explanations for the fire. The experts reached quite different conclusions, however, as to which of these causes was more likely.

Chris Rallis, Valley's expert, stated his opinion that the fire was caused by a light bulb being left in contact with a cardboard box. He had performed tests in which he was able to ignite a bicycle carton by placing a light bulb against the box

7

under certain conditions. Based on his investigation, he ruled out an electrical cause.

Wesley Sherman, another expert for the plaintiffs, felt that the electrical malfunction theory was unlikely, but that the fire could have been caused by a light bulb placed against a cardboard box.

Jerry Smith, Battalion Chief of the Miles City Fire Department, felt that both theories were plausible, but that the light bulb was the more likely cause.

Donald Howard, a fire investigator retained by the defendant, initially felt that the fire was not electrically caused. However, after investigating further and conducting tests, he concluded that the light bulb was an unlikely source of the fire, and the most probable cause was a malfunction in the electrical system.

Charles King, another expert retained by the defendant, expressed the opinion that the light bulb could not have caused the fire. He felt that the most probable cause was something in the electrical system.

Kevin Vogel, another defense witness, also testified that the fire was probably caused by some electrical incident.

At the end of the trial, Valley moved for a directed verdict on Steadman's Hardware's counterclaim, based on lack of sufficient evidence and lack of a showing that Valley had breached any legal duty. The District Court granted this motion. The jury returned a verdict in favor of Steadman's Hardware on Valley's complaint.

8

The District Court entered its judgment on August 3, 1990. Valley Properties and Valley Motor Supply appeal from this judgment.

I

Did the District Court err by refusing to instruct the jury on appellants' theory of *res ipsa loquitur*?

Valley contends the District Court erred by refusing to give proposed instructions under the theory of *res ipsa loquitur*. We disagree. This Court has stated the doctrine of *res ipsa loquitur* in the following terms:

> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Tompkins v. Northwestern Union Trust Co.* (1982), 198 Mont. 170, 176, 645 P.2d 402, 406 (quoting Restatement (Second) of Torts § 328D).

Under the facts of the present case, the doctrine is not applicable. A fire in a warehouse, of unknown origin, may occur in the absence of negligence. Further, the evidence did not clearly eliminate causes, such as a malfunction in the electrical system, which were not chargeable to the occupants of the warehouse. The fire investigators and other experts disagreed regarding the cause of the fire. Several of these experts suggested that the

9

instrumentality causing the fire may have been outside of the control of Steadman's Hardware. As noted by the court in *Wright v. United States* (D.Mont. 1979), 472 F.Supp. 1153, 1156: "[T]he doctrine of *res ipsa loquitur* is not usually applicable in cases of fires of unknown origin . . . ." This is such a case.

## II

Did the District Court err by refusing to give an instruction based upon *Thayer v. Hicks* (1990), 243 Mont. 138, 793 P.2d 784?

Valley contends that the District Court erred by refusing to give the following instruction, which was based upon language from our opinion in *Thayer v. Hicks* (1990), 243 Mont. 138, 793 P.2d 784:

"Plaintiffs are not required to eliminate all possible causes of damages in order to prove causation." Valley contends this instruction was necessary for Valley to be able to argue its theory of the case to the jury. We disagree.

The District Court gave the following instructions, among others:

### INSTRUCTION NO. 5

Burden of proof means burden of persuasion. A party who has the burden of proof must persuade you by the evidence that his claim is more probably true than not true. In other words, the evidence supporting the propositions which a party has the burden of proving must outweigh the evidence opposed to it. In determining whether a party has met this burden you will consider all the evidence, whether produced by the plaintiff or defendant.

### INSTRUCTION NO. 9

The plaintiffs have the burden of proving:

10

1. That the defendant was negligent.
2. That the plaintiffs' property was damaged.
3. That the <u>defendant's negligence was a cause</u> of the damage to plaintiffs' property . . . .

### INSTRUCTION NO. 10

The defendant's negligent conduct <u>is a cause</u> of the damage <u>if it helped produce it</u> and if the damage would not have occurred without it. [Emphasis added.]

These instructions informed the jury what Valley was required to prove in order to establish causation. Where other instructions adequately cover the law relating to a particular issue, it is not error to refuse a proposed instruction on the same subject. *Noll v. City of Bozeman* (1977), 172 Mont. 447, 564 P.2d 1296 (refused instruction similar to Valley's proposed instruction).

### III

Did the District Court err by allowing an expert witness to testify as a rebuttal witness, where the witness had not been disclosed before trial?

Steadman's Hardware called Kevin Vogel, an engineer and consultant, as a rebuttal witness. Valley's counsel objected to Vogel's testimony on the basis that he had not been listed in the pretrial order or previously disclosed to Valley. Valley contends the District Court erred by allowing Vogel to testify.

The determination of whether proposed testimony is admissible as rebuttal testimony in a given case is within the sound discretion of the District Court, and this Court will not reverse the District Court's ruling unless it abused this discretion. "The

11

law does not require the advance disclosure of rebuttal witnesses." *Massman v. City of Helena* (1989), 237 Mont. 234, 243, 773 P.2d 1206, 1211.

Here, we note that Valley was allowed to present testimony of rebuttal witness Wesley Sherman, in spite of the objection by Steadman's Hardware that Sherman was only named as a rebuttal witness at the time of the pretrial order, and Steadman's Hardware had not had an opportunity to depose him. It does not seem unfair that the District Court similarly allowed a belatedly disclosed witness to testify in surrebuttal for Steadman's Hardware. We conclude that the District Court did not abuse its discretion by allowing the witness to testify.

Accordingly, finding no error in the challenged rulings of the District Court, we affirm the judgment.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices

12

January 7, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Richard M. Kovak
COZEN AND O'CONNOR
5200 Washington Mutual Tower
1201 Third Avenue
Seattle, WA 98101-3033

James L. Jones
DORSEY & WHITNEY
P.O. Box 7188
Billings, MT 59103

T. Thomas Singer, Esq.
MOULTON, BELLINGHAM LAW FIRM
P.O. Box 2559
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy